Daniel Melo
The Melo Law Firm
NC Bar # 48654
2920 Forestville Road, Ste 100
PMB 1192
Raleigh, NC 27616
Tel: (919) 348-9213
dan@themelolawfirm.com

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA TUSCON DIVISION

| | |
|---|---|
| Natalia Mendoza; Andrew Free,<br><br>        Plaintiffs,<br><br>    v.<br><br>U.S. Federal Bureau of Investigation;<br>U.S. Department of State; U.S. Bureau Oo Indian Affairs<br><br>        Defendants. | Case No. _____<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF UNDER THE FREEDOM OF INFORMATION ACT** |

**Preliminary Statement**

    1.    On February 21, 1986, Glenn R. Miles (Miles), a member of the Tohono O'odham Nation, was killed in the line of duty as a Customs Agent for the U.S. Treasury Department in Arizona. Nearly 40 years later, his murder remains unsolved.

    2.    Before he was killed, Miles had advised the Customs Service's Tucson office that he was pursuing three men on foot on the Papago Indian Reservation. After he failed to check back in, officers went out to search for him.

1

3. Miles's body was found on a dirt road near the San Miguel border crossing, having been shot multiple times. Several federal agencies and Arizona state officials launched an investigation into Miles's death, including, *inter alia,* the U.S. Customs Service, the FBI, and the Arizona Department of Public Safety.

4. Days after his death, the U.S. Customs Service offered a $100,000 reward for information leading to the arrest and conviction of the three purported gunmen who allegedly killed Miles. Investigators at the time believed the assailants had fled to Mexico.

5. Around July 1986, Mexican police arrested five men in connection with the "drug-related" slaying of Miles. A spokesperson for the regional U.S. Customs Service stated the men were expected to face murder-related charges in Mexico. All five men were later acquitted by a Mexican Judge in Nogales.

6. Miles's death was part of a growing call within U.S. border enforcement to stem the flow of people across the U.S.-Mexico border. As one *New York Times* article from June 1986 notes, in response to the uptick in undocumented migration, drug and arms trafficking, and related violence, the United States "is preparing to restrict the relatively free flow of people and materials across the Mexican Border." *See* Joel Brinkley, *U.S. Set to Act on Mexico Border Drug Flow*, *NY Times* (June 26, 1986). The article goes on to discuss the militarization of the border, even as the plan "could be disastrous for Mexico, which depends heavily politically and economically on the 'safety valve' that the barely restricted access to

the American employment market now offers to unemployed and underemployed Mexicans."

7. Miles's death was tied to the "growing indications" of drug smuggling from Mexico to Arizona. *See* ABC Evening News, *Special Assignment (Arizona: Drug Smuggling)* (aired June 24, 1986).

8. Despite the investigation and charges of the five men implicated in Miles's murder, it remains unsolved.

9. Theories surrounding the circumstances of his death include that he was ambushed by smugglers who managed to pull his gun, or that Miles had demanded a bribe from the smugglers.

10. There is little other publicly available information about the investigation into Miles's death.

11. Plaintiffs seek a declaration that Defendants have improperly withheld records that will shed light on the circumstances surrounding Miles's death, and declaratory and injunctive relief requiring Defendants to immediately process and release the requested records.

12. This action is brought pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, to obtain improperly withheld records concerning Miles's death and the subsequent investigation.

13. Pursuant to various FOIA requests, Plaintiffs seek records from Defendants. Defendants have both failed to adequately acknowledge Plaintiffs'

various FOIA requests, as required by law, and have otherwise failed to adequately respond to Plaintiffs' FOIA requests, in violation of the Act.

## JURISDICTION AND VENUE

14. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B). Plaintiffs' request for declaratory and other relief is properly subject to this Court's subject-matter jurisdiction pursuant to 5 U.S.C. §§ 552(a)(4)(F), 701-06 and 28 U.S.C. §§ 1331, 2201(a), and 2202.

15. Venue is proper within this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1391(b)(1), (b)(2), and (e)(1) as the place "in which the agency records are situated." Venue is also proper under 28 U.S.C. 1391(e) because "a substantial part of the events or omissions giving rise to" this action occurred in this District, and a substantial part of the records that are subject to the action are situated in this District.

16. Plaintiffs have constructively exhausted all administrative remedies in connection with its Federal FOIA requests, as detailed below.

17. Under the latter provision, this court may retain jurisdiction and allow Federal Defendants additional time to complete the processing of Plaintiffs' FOIA requests if, <u>and only if</u>, the government can demonstrate that exceptional circumstances exist ***and*** their due diligence in responses to Plaintiffs' requests. Because Defendants can demonstrate neither, this Court has jurisdiction to declare unlawful the agencies' withholdings and order immediate production of records unlawfully withheld.

18. Because Plaintiff brings this action after constructively exhausting administrative remedies, this Court's jurisdiction is based on 5 U.S.C. § 552(a)(4)(B) and 5 U.S.C. § 552(a)(6)(A)(i).

## PARTIES

19. Plaintiff Natalia Mendoza (Ms. Mendoza) is a Co-Director of Altar Centro de Investigación, a nonprofit research station that explores social, ecological, and artistic elements in the border zone of the Sonoran Desert. She has her PhD in sociocultural Anthropology from Columbia University, was a postdoctoral research fellow at Bard College, and was previously an Assistant professor of Anthropology at Fordham College. She has written extensively on the U.S.-Mexico border region, including the movement of people, drug trafficking, violence, and the politicization of the Sonoran border region.

20. Professor Mendoza is currently researching and writing a book about Miles's death. Her book relies on government records as an authoritative primary source for the official facts surrounding Miles's death.

21. Plaintiff Andrew Free (Free) is a lawyer, organizer, freelance investigative journalist, and researcher who writes and publishes stories about U.S. bordering, policing, and corruption.

22. Plaintiff's Free's reporting relies on government records as an authoritative primary source for the official facts surrounding the bordering, policing, and corruption he writes about.

23. Plaintiffs Mendoza and Free filed FOIA requests before the Federal Bureau of Investigation (FBI), the Department of State (DOS), and the Bureau of Indian Affairs (BIA).

24. The FBI is an arm of the Department of Justice (DOJ) and is an agency within the meaning of 5 U.S.C. § 552(1)(f). The FBI has possession, custody, and control of records responsive to Plaintiffs' request.

25. The DOS is a federal agency within the meaning of FOIA U.S.C. § 552(1)(f). The DOS has possession, custody, and control of records responsive to Plaintiffs' request.

26. The BIA is a federal agency within the meaning of FOIA U.S.C. § 552(1)(f). The BIA has possession, custody, and control of records responsive to Plaintiffs' request.

27. Plaintiffs seek a declaration that Defendants FBI, DOS, and BIA have improperly withheld records that will shed light on the circumstances surrounding Miles's death and injunctive relief requiring Defendants to immediately process and release the requested records.

## FACTS

**FOIA Request to FBI**

28. On May 21, 2025, Plaintiff Free filed a FOIA request with the FBI (FBI request) seeking recordings pertaining to Miles's death. The FBI assigned the request a tracking number of 1668952-000. The Request and email correspondence with the FBI is attached as Exhibit A. *See* Ex. A at 1.

29. On May 29, 2025, the FBI corresponded with a form letter and released two groups of records totaling 66 pages that were "previously processed and released. Please see the selected paragraph below for relevant information specific to your request." The FBI's form letter response is attached as Exhibit B. *See* Ex. B at 1.

30. In the Defendant FBI's letter, it checked the box noting that "Please be advised that additional records responsive to your subject exist. If this release of previously processed material does not satisfy your request, you must advise us that you want additional records processed." *See id.* at 1. It went on to require Plaintiff Free to submit this request for additional records within thirty days. *Id.*

31. In the records themselves, the FBI applied redactions throughout the two releases of records and identified purported FOIA exemptions to each redaction on the right margin for each. Excerpts of the released records exemplifying these redactions are attached as Exhibit C.

32. On July 17, 2025, Plaintiff Free appealed the FBI's redactions, its determination not to release additional records, and asked the FBI to reopen the request if it had been closed and to provide the one media file noted in the FBI's record. *See* Ex. A at 4.

33. On July 25, 2025, Defendant FBI's Office of Information Policy (OIP) acknowledged the appeal related to the Request (1668952-**000**) and assigned it an appeal number of A-2025-02265, attached as Exhibit D.

34. On September 15, 2025, while the appeal was still pending with OIP, the FBI sent a *new* receipt letter, assigning it a different request number (1668952-**001**). The FBI did not provide an explanation for why it issued a new receipt letter with a different request number. The FBI's new receipt request is attached as Exhibit E.

35. The FBI's September 15, 2025, letter stated in relevant part:

> You also requested information regarding one or more third parties. Please be advised the FBI will neither confirm nor deny the existence of such records pursuant to FOIA exemptions (b)(6) and (b)(7)(C), 5 U.S.C. §§ 552 (b)(6) and (b)(7)(C). The mere acknowledgement of the existence of FBI records on third party individuals could reasonably be expected to constitute an unwarranted invasion of personal privacy. This is our standard response to such requests and should not be taken to mean that records do, or do not, exist.

*See id.* at 1.

36. Defendant FBI did not segregate or produce any responsive records related to the purported third-party individual(s). *See id.*

37. DOJ regulations in relevant part state, "Where a request for records pertains to a third party, a requester may receive greater access . . . by submitting proof that the individual is deceased . . . ." *See* 28 C.F.R. § 16.3(a)(4).

38. On September 23, 2025, the OIP responded to Plaintiff Free's appeal regarding the withholdings made by the FBI as well as the adequacy of the search. The OIP's letter is attached as Exhibit F.

39. In the letter, OIP stated, "After carefully considering your appeal, and as a result of discussions between FBI personnel and this Office, please be advised that the FBI has reopened your request under Request No. 1668952-**001**[1] to conduct a search for additional responsive records." *Id.* at 1.

40. OIP's response also stated, after listing the applicable exemptions and their basic statutory language, that it "is reasonably foreseeable that disclosure of the information withheld would harm the interests protected by these exemptions." OIP went on to state "it was otherwise affirming the FBI's action on your request" and "If you are dissatisfied with [OIP]'s action on your appeal, the FOIA permits you to file a lawsuit in federal district court in accordance with 5 U.S.C. § 552(a)(4)(B)." *Id.* at 2.

41. On September 24, 2025, Plaintiff Free appealed the FBI's September 15th communication regarding (request No. 1668952-**001**), requesting that OIP remand this portion of the request to the FBI:

> [W]hich categorically denies some categories of unspecified records because they are third-party requests, and suggests that I provide a Certificate of Identity in order to access those records. The subject of the records I sought is a dead person. Hence, I cannot, within the current limits of generally accepted reality, obtain a sworn certification of identity regarding that individual at this time. As to other subjects, whom FBI may contend are "third parties", a balancing test is required to determine whether the exemptions cited even protect those individuals' identities, and no blanket application of Exemptions 6 or 7 is permitted. I therefore appeal the agency's second "determination" in this case, which arrived roughly a week before the resolution and partial remand of my first appeal. Please remand this portion of the case

---

[1] Again, this number differs from the original request despite OIP noting that it was addressing the original request, number **1668952-000.**

9

>to the FBI FOIA with instructions to process records notwithstanding the presence of "third party" information and the absence of certification of identity forms signed by the Border Patrol Agent killed in 1986.

*See* Ex. A, Request and Correspondence at 4 (emphasis added).

42. Plaintiff Free also requested that OIP remand the case to the FBI with instructions to process records notwithstanding the presence of third-party information and the lack of certification of identity forms. *See id.*

43. At the time of filing this Complaint, Defendant FBI and its components have not produced another record responsive to Plaintiff Free's request and have not acknowledged or made a decision on Plaintiff Free's September 24th appeal with respect to the third-party waivers. The September 24th appeal remains pending at the time of filing of this Complaint.

44. Upon information and belief, Defendant FBI has received other substantially similar FOIA requests regarding Glenn R. Miles and the investigation into his death.

45. Under 5 U.S.C. § 552(a)(2)(D) Defendant FBI has a duty to affirmatively disclose records to the public where they have been previously released to any person; because of the nature of their subject matter, have become or are likely to become the subject of subsequent requests for substantially similar records or that have been requested 3 or more times.

46. Plaintiffs have constructively exhausted their administrative remedies as to the redactions and exemptions in the records produced by the FBI in its May 29th release.

47. Since its May 29th release, the FBI has not produced any other responsive records.

**FOIA Request to DOS**

48. On May 21, 2025, Plaintiff Free, on behalf of himself and Plaintiff Mendoza, submitted a request (DOS request) for agency records created between February 20, 1986, and continuing through December 31, 1986, regarding "communications sent or received by William Laverty" regarding the death of Agent Miles on or about February 21, 1986. Plaintiffs' request to Defendant DOS and subsequent correspondence is attached as Exhibit E. *See* Ex. G at 1-2.

49. On May 23, 2025, DOS acknowledged receipt of Plaintiffs' request and assigned it a tracking number of F-2025-18750. Defendant DOS's response acknowledging the request is attached as Exhibit G. *See* Ex. G at 3-4.

50. On June 27, 2025, DOS updated the aforementioned request to "On hold – Need Info/Clarification." In its email to Plaintiffs, Defendant DOS stated it needed more information because the "request for personal records does not include the required verification of identity documentation" and required Plaintiffs to respond with the required information no later than July 9, 2025. *See* Ex. G at 3-7.

51. On June 30, 2025, Plaintiff Free responded, stating, "I am requesting records without a third-party authorization because one is not required by FOIA or the State's regulations. I have provided the names and information in the request to allow for a targeted search. Please task it or make a determination on the request so that I may appeal." *See* Ex. G at 7.

11

52. After follow-up from Plaintiffs, on August 1, 2025, Defendant DOS responded, stating, "The Information Access Liaison Office is in receipt of your email below regarding case number F-2025-18750." *See* Exhibit G at 7-8. That same day, the Information Access Liaison Office sent an email stating, "Based on the original request you provided, we do not havereason [sic] to believe the U.S. Department of State has records responsive to yourrequest [sic]. Accordingly, we are administratively closing your request. We suggest that you contact the U.S. Customs Border ofProtection [sic] (CBP) directly for records related to this request." In yet another message that same day, DOS stated that Plaintiffs' request was updated to the status "Closed." *See id.* at 9-11.

53. Plaintiffs immediately appealed. *See* Ex. G at 11.

54. On August 18, 2025, Defendant DOS responded, stating it had received Plaintiffs' appeal and assigned it a tracking number of A-2025-00414. *See id.* at 11.

55. On September 17, 2025, after follow-up, DOS stated Plaintiff's appeal "is currently awaiting review." *Id.* at 12.

56. At the time of filing this Complaint, Defendant DOS has not made a statutory determination on Plaintiffs' original request, has not released records, and has not decided Plaintiffs' appeal.

57. Plaintiffs have constructively exhausted their administrative remedies regarding their request to DOS.

**FOIA to the BIA**

58. On May 21, 2025, Plaintiff Free submitted a FOIA request to the BIA seeking records "regarding the February 21, 1986, murder of U.S. Customs Agent Glenn R. Miles within the Tohono O'odham Reservation on the U.S.-Mexico border." Plaintiff's request and correspondence with the BIA are attached as Exhibit H.

59. On May 22, 2025, Defendant BIA acknowledged Plaintiff Free's request and assigned it a control number of DOI-2025-006691. *See id.* at 1-2.

60. After follow-up, on August 6, 2025, with no further explanation, Defendant BIA responded, stating it had closed Plaintiff's request. That same day, Plaintiff Free appealed. *See* Ex. H. at 2.

61. On September 10, 2025, the BIA responded to Plaintiffs' appeal, stating, "After a search for the records, we did not identify any responsive records to your request." *See* Exhibit I, BIA Appeal Response at 1.

62. That same day, Plaintiff appealed the adequacy of the search, noting that "While the FBI was the primary investigative agency, contemporaneous records reflect a BIA support role in the investigation, and indicate records were created as part of that role." Ex. H at 3.

63. At the time of filing this Complaint, Defendant BIA has not made a statutory determination on Plaintiffs' original request, has not released records, and has not acknowledged or decided Plaintiffs' appeal as to the adequacy of the search.

//

//

## CLAIMS FOR RELIEF

### COUNT I
### FAILURE TO MAKE A DETERMINATION
### VIOLATION OF 5 U.S.C. § 552

64. Plaintiffs re-allege and incorporate by reference all allegations in the foregoing paragraphs as if fully set forth herein.

65. FOIA requires an agency to make a determination within a maximum of 30 working days under *Citizens for Responsibility & Ethics in Washington v. Federal Election Commission* (*CREW*), 711 F.3rd 180 (D.C. Cir. 2013) (Kavanaugh, J.).

66. "[I]n order to make a 'determination' and thereby trigger the administrative exhaustion requirement, the agency must at least: (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse." Id. at 188.

67. The *CREW* Court rejected the very approach that Defendants FBI, DOS, and BIA posit; federal agencies cannot "decide to later decide." *CREW*, 711 F.3d at 186.

68. Defendants FBI, DOS, and BIA have failed to make a determination as to Plaintiffs' respective FOIA requests to each agency.

//

//

## COUNT II
## VIOLATION OF 5 U.S.C. § 552(a)(7)(B)(ii)

69. Plaintiffs re-allege and incorporate by reference all allegations in the foregoing paragraphs as if fully set forth herein.

70. Defendants must establish a telephone line or internet service to provide an estimated date on which the agencies will complete action on the request.

71. In violation of this statute, Defendants failed to provide an estimated date on which the respective requests would be completed.

## COUNT III
## VIOLATION OF 5 U.S.C. § 552(a)(3)

72. Plaintiffs re-allege and incorporate by reference all allegations in the foregoing paragraphs as if fully set forth herein.

73. Upon request, an "agency … shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A).

74. Defendants have violated this provision by failing to make records "promptly available."

## COUNT IV
## PATTERN AND PRACTICE OF VIOLATION OF TIME LIMITS

75. Plaintiffs re-allege and incorporate by reference all allegations in the foregoing paragraphs as if fully set forth herein.

76. Defendants have established a pattern and practice of violating statutory time limits and the promptly available requirements under FOIA.

77. The "promptly available" requirement typically means "within days or a few weeks of a determination, not months or years." *Sierra Club v. U.S. Env't Prot. Agency*, 2018 WL 10419238, at *5 (N.D. Cal. Dec. 26, 2018) (quoting *CREW*, 711 F.3d at 188) (internal quotation marks omitted); *Owen v. U.S. Immigration & Customs Enforcement*, 2023 WL 9470904, at *6 (C.D. Cal. Jan. 12, 2023).

## COUNT V
## VIOLATION OF 5 U.S.C. § 552(a)(4)(B)
## UNLAWFUL WITHHOLDING OF AGENCY RECORDS BY THE FBI

78. Plaintiffs re-allege and incorporate by reference all allegations in the foregoing paragraphs as if fully set forth herein.

79. Defendant FBI is a government agency subject to the FOIA and must therefore make reasonable efforts to search for and release requested records and otherwise lawfully support and provide the basis for any withholdings made pursuant to the exemptions provided by the FOIA.

80. Defendant FBI conceded in its response to Plaintiff Free's request that there were additional records but that it would not provide absent further action from Plaintiff, in violation of FOIA's statutory provisions.

81. Because Defendant FBI has failed to make a proper statutory determination on Plaintiff's FBI FOIA request, the FBI is unlawfully withholding records.

82. Defendant FBI's use of redactions, in its limited production of records, as summarily affirmed by OIP, constitutes unlawful withholding under FOIA.

83. Plaintiffs have a legal right under the FOIA to the timely search and release of responsive, non-exempt agency records responsive to the FBI FOIA Requests.

84. Defendant FBI has also failed to consider whether partial disclosure of information is possible whenever the agency determines that a full disclosure of the records is not possible and has failed to take reasonable steps necessary to segregate and release nonexempt information to Plaintiffs.

## COUNT VI
## VIOLATION OF 5 U.S.C. § 552(a)(4)(B)
## UNLAWFUL WITHHOLDING OF AGENCY RECORDS BY DOS

85. Plaintiffs re-allege and incorporate by reference all allegations in the foregoing paragraphs as if fully set forth herein.

86. Plaintiff Free has a legal right under FOIA to the timely search and release of responsive, non-exempt DOS agency records responsive to Plaintiff's FOIA request.

87. There is no legal basis for Defendant DOS's failure to adequately and timely search for and release responsive agency records in compliance with the FOIA's time limits.

88. Defendant DOS's failure to make reasonable and timely efforts to search for and release responsive agency records constitutes an unlawful withholding under the Act that this Court can and should remedy through a declaration and injunction.

89. Defendant DOS's failure to initiate an adequate search and substantively respond to Plaintiffs' FOIA request within the timeframe allowed by the law violates FOIA.

90. Because Defendant DOS has failed to comply with FOIA's time limits, Plaintiffs have constructively exhausted their administrative remedies.

## COUNT VII
## VIOLATION OF 5 U.S.C. § 552(a)(2)(D)
## VIOLATION OF AFFIRMATIVE DISCLOSURE REQUIREMENTS

91. Plaintiffs re-allege and incorporate by reference all allegations in the foregoing paragraphs as if fully set forth herein.

92. Under 5 U.S.C. § 552(a)(2)(D) Defendant FBI has a duty to affirmatively disclose records to the public where they have been previously released to any person; because of the nature of their subject matter, have become or are likely to become the subject of subsequent requests for substantially similar records or that have been requested 3 or more times.

93. Defendant FBI has failed to affirmatively disclose records related to Plaintiffs' request.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

1. enter judgment on all counts in favor of Plaintiffs and against Defendants.

2. declare Defendants withholdings under the FOIA unlawful and enjoin Defendants from continuing to withhold all non-exempt records responsive to the FOIA Requests.

3. declare Defendants have established a pattern and practice of violating statutory time limits under FOIA.

4. order Defendants to make a determination as required by FOIA.

5. order Defendants to conduct a prompt and adequate search for all records responsive to the FOIA Requests, determine which, if any, portions of such records are exempt, and require Defendants to release the remaining portions of these agency records.

6. order Defendants to produce, within 20 days of the Court's order, or by such other date as the Court deems appropriate, all non-exempt records responsive to the respective agency FOIA requests, all segregable records responsive to the FOIA Requests, and indices justifying the withholding of any responsive records withheld under any claim of exemption.

7. award Plaintiff reasonable costs and attorney's fees pursuant to 5 U.S.C. § 552(a)(4)(E) and/or 28 U.S.C. § 2412(d)(1)(A).

8. award Plaintiffs such further relief as the Court deems just, equitable, and appropriate.

Dated: September 26, 2025          By: /s/ Daniel Melo

Daniel Melo
The Melo Law Firm
NC Bar # 48654
2920 Forestville Road, Ste 100
PMB 1192
Raleigh, NC 27616
Tel: (919) 348-9213
dan@themelolawfirm.com
*Pro Hac Vice*
*Pro Bono Counsel For Plaintiff*