UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Natalia Mendoza, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Federal Bureau of Investigation,<br><br>Defendant. | Civil Action No. 25-cv-539 (JEM) |

**DECLARATION OF CHRISTINA L. DRIVER**

I, Christina L. Driver, declare as follows:

1. I am currently an Assistant Section Chief of the Record/Information Dissemination Section (RIDS), Information Management Division, Federal Bureau of Investigation (FBI), located in Winchester, Virginia, and in the absence of the RIDS Section Chief, I serve as Acting Section Chief for RIDS. I have held this position since June 2026. I joined the FBI in February 1999. Prior to my current position, I served as International Operations Division's Chief Protocol Officer from April 2022 to February 2023, Unit Chief of the International Operations Division's International Protocol Unit from September 2011 to April 2022, Program Manager for the Weapons of Mass Destruction Directorate from August 2008 to September 2011, Protocol Affairs Specialist in the Office of International Operations from October 2004 to August 2008, Research Analyst in IMD from August 2002 to September 2004, and Paralegal Specialist in IMD from February 1999 to July 2002.

2. In my official capacity as Acting Section Chief of RIDS, I supervise eight Federal Bureau of Investigation Headquarters (FBIHQ) units and two field operational service center units. RIDS' collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, as amended by the OPEN Government Act of 2007, the OPEN FOIA Act of 2009, and the FOIA Improvement Act of 2016; the Privacy Act of 1974, 5 U.S.C. § 552a; Executive Order 13526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, including information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

3. Because of the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA and the Privacy Act of 1974. Specifically, I am familiar with the FBI's handling of Plaintiff Free's FOIA request that is the subject of this litigation.[1]

[1] The Complaint filed in this litigation indicates that both Natalia Mendoza and Andrew Free are Plaintiffs; however, only Plaintiff Andrew Free submitted the FOIA request to the FBI that remains at issue in this litigation (FBI FOIPA Request Number 1668952-000, reopened as 1668952-001). Furthermore, only Andrew Free administratively appealed the FBI's determinations in response to the FOIA request at issue prior to filing the Complaint in this litigation.

4. In response to Plaintiff Free's request, the FBI located and reviewed a total of 1,862 responsive pages and 55 minutes, 6 seconds of responsive audio material subject to the FOIA.[2]

5. The FBI submits this declaration in support of Defendant's Motion for Summary Judgment. Part I of this declaration provides the Court with a summary of the administrative history of Plaintiff Free's request. Part II describes the procedures used to search for responsive records. Part III provides the FBI's justification for categorically withholding all records in full pursuant to FOIA Exemption 7(A), 5 U.S.C. § 552 (b)(7)(A), and for withholding information pursuant to underlying FOIA Exemptions 3, 6, 7(C), 7(D), and 7(E), 5 U.S.C. § 552(b)(3), (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E). Part IV provides the FBI's justification for neither confirming nor denying the existence of responsive records pursuant to FOIA Exemptions 6 and 7(C) concerning a third party identified in Plaintiff Free's request.

## PART I: ADMINISTRATIVE HISTORY OF PLAINTIFF FREE'S REQUEST

6. By electronic FOIA (eFOIA)[3] dated May 22, 2025, Plaintiff Andrew Free submitted a FOIA request to the FBI seeking the following:

> [a]ny FBI records pertaining to Glenn R. Miles, who was killed in the line of duty as a Customs Agent for the U.S. Treasury Department in Arizona on February 21, 1986. This request includes, but is not limited to any FBI lab analysis of Agent Miles' handheld audio recorder, or references to its contents, as well as any 302s or field reports regarding Agent Miles'

---

[2] Previously, the FBI advised Plaintiffs that it located only 3 minutes, 16 seconds of responsive audio material. Upon completing its categorical review, the FBI confirms that it located 55 minutes, 6 seconds of audio material responsive to Plaintiff Free's request.

[3] An eFOIA is an electronic means by which requesters can submit FOIA requests to the FBI, online, through the FBI's public website, www.FBI.gov.

> potential interactions with the alleged drug traffickers who were reportedly involved in his murder.

Plaintiff Free also requested the records of another third-party individual, specifically:

> any records sent or received by FBI to William Laverty, U.S. Customs Attache at the U.S. Embassy in Mexico City regarding the July 1986 arrest of five Mexican nationals in Hermosillo, Sonora, Mexico who were alleged to have been involved with the slaying.

Plaintiff Free requested advanced notice of any search and duplication fees associated with the processing of his request. (Ex. A.)

## FBI REQUEST NUMBERS 1668952-000 AND 1668952-001

7. By letter dated May 27, 2025, the FBI acknowledged receipt of Plaintiff Free's FOIA request dated May 22, 2025, and notified Plaintiff Free that it had assigned FBI FOIPA Request Number 1668952-000 to the first portion of the request seeking "[a]ny FBI records pertaining to Glenn R. Miles, who was killed in the line of duty as a Customs Agent for the U.S. Treasury Department in Arizona on February 21, 1986." The FBI also informed Plaintiff Free that he submitted his request via the FBI's eFOIPA system, and the FBI determined it was compliant with the eFOIPA terms of service, and future correspondence about the request would be provided electronically;[4] and for the purpose of assessing any fees, the FBI determined as a general (all other) requester, he

[4] The eFOIPA system receives all types of Freedom of Information Privacy Act (FOIPA) requests; to include requests on first parties (Privacy Act requests), deceased individuals, policies and procedures, events, organizations, and any other topic. The FBI transmits FOIA responses electronically; however, Privacy Act responses are not electronically transmitted. Furthermore, if a FOIPA request does not meet the eFOIPA Terms of Service, then all communication will be completed through standard mail.

would be charged applicable search and duplication fees in accordance with 5 U.S.C. § 552(a)(4)(A)(ii)(III). As to the second portion of the request seeking records concerning William Laverty, the FBI informed Plaintiff Free that he requested information on a third party individual and the FBI would neither confirm nor deny the existence of such records pursuant to FOIA Exemptions 6 and 7(C), 5 U.S.C. § 552(b)(6) and (b)(7)(C).[5] The FBI advised that the mere acknowledgement of the existence of FBI records on third party individuals could reasonably be expected to constitute an unwarranted invasion of personal privacy and that this is the FBI's standard response to such requests and should not be taken to mean that records did, or did not, exist. The FBI provided a DOJ-361 Certification of Identity form for Plaintiff Free to complete and return. Additionally, the FBI informed Plaintiff Free that he could check the status of the request at www.vault.fbi.gov and/or contact the FBI with any questions at foipaquestions@fbi.gov. Furthermore, Plaintiff Free could appeal the FBI's response to the Department of Justice (DOJ), Office of Information Policy (OIP) within ninety (90) days of its letter, contact the FBI's FOIA public liaison, and/or seek dispute resolution services by contacting the Office of Government Information Services (OGIS). (Ex. B.)

---

[5] A *Glomar* response is one that refuses to confirm or deny the existence of certain records in response to a FOIA request. See *Wilner v. NSA*, 592 F.3d.60, 67 (2d Cir.2009) The phrase "*Glomar*" stems from a case in which a FOIA requester sought information concerning a ship named the "*Hughes Glomar Explorer*," and the CIA refused to confirm or deny its relationship with the *Glomar* vessel because to do so would compromise the national security or divulge intelligence sources and methods. *Phillipi v. CIA*, 655 F. 2d. 1325 (D.C. Cir. 1981). *Glomar* responses are proper "if the fact of the existence or nonexistence of agency records falls within a FOIA exemption." *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007).

8. By letter dated June 3, 2025, the FBI made a release of preprocessed[6] records to Plaintiff Free, advising that 66 pages of records were being released in part, with certain information exempted pursuant to FOIA Exemptions 3, 6, 7(C), 7(D), and 7(E), 5 U.S.C. § 552 (b)(3), (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E). The FBI informed Plaintiff Free of the existence of additional records responsive to the subject of the request and requested that if the release of the previously processed material did not satisfy his request, then he must advise the FBI that he wants the additional records to be processed. Additionally, the FBI informed Plaintiff Free that he could find additional information about the FOIPA at www.fbi.gov/foia and/or contact the FBI with any questions at foipaquestions@fbi.gov. Lastly, the FBI advised Plaintiff Free that if dissatisfied with the FBI's determination he could submit an administrative appeal to OIP within 90 days of the date of its letter, contact the FBI's FOIA public liaison, or seek dispute resolution services by contacting OGIS. (Ex. C.)

9. By letter dated July 25, 2025, Plaintiff Free submitted an administrative appeal to OIP challenging the FBI's determination in response to FBI FOIA Request Number 1668952-000. Specifically, he challenged the FBI's application of FOIA Exemptions 3, 6, 7(C), 7(D), and 7(E) within the previously processed records and the FBI's determination not to provide additional records without further action from him.

[6] Preprocessed records are records that the FBI has processed in response to a prior FOIA request for the same information.

Lastly, Plaintiff Free asked that the request be reopened and that the FBI provide one media file. (Ex. D.)[7]

10. By letter dated July 25, 2025, OIP acknowledged receipt of Plaintiff Free's appeal of the FBI's determination in FBI Request Number 1668952-000. OIP advised Plaintiff Free that it assigned appeal number A-2025-02265 to the appeal. (Ex. E.)

11. By letter dated September 15, 2025, after discussions with OIP, the FBI reopened Plaintiff Free's FOIA request and notified him that it had assigned FBI FOIPA Request Number 1668952-001 to the portion of the request seeking "[a]ny FBI records pertaining to Glenn R. Miles, who was killed in the line of duty as a Customs Agent for the U.S. Treasury Department in Arizona on February 21, 1986."[8] As to the portion of Plaintiff Free's request seeking records on William Laverty, the FBI again informed Plaintiff Free that he requested information on a third party individual and the FBI would neither confirm nor deny the existence of such records pursuant to FOIA Exemptions 6 and 7(C), 5 U.S.C. § 552(b)(6) and (b)(7)(C) because the mere acknowledgement of the existence of FBI records on third party individuals could reasonably be expected to constitute an unwarranted invasion of personal privacy. The FBI further explained that

[7] To increase efficiency and avoid the overload of the Court's docket, the FBI removed the processed pages which originally accompanied Plaintiff's appeal.

[8] The FBI also informed Plaintiff Free that he submitted his request via the FBI's eFOIPA system and the FBI determined it was compliant with the eFOIPA terms of service; therefore, future correspondence about the request would be provided electronically. Additionally, the FBI advised that for the purpose of assessing any fees, the FBI determined Plaintiff Free to be a general (all other) requester and that Plaintiff Free would be charged applicable search and duplication fees in accordance with 5 U.S.C. § 552(a)(4)(A)(ii)(III).

this is the FBI's standard response to such requests and should not be taken to mean that records do, or do not, exist. The FBI also, for the second time, provided a DOJ-361 Certification of Identity form for Plaintiff Free to complete and return. Additionally, the FBI informed Plaintiff Free that he could check the status of the request at www.vault.fbi.gov and/or contact the FBI with any questions at foipaquestions@fbi.gov. Furthermore, the FBI advised Plaintiff Free that if dissatisfied with the FBI's response, he could appeal the FBI's response to OIP within 90 days of its letter, contact the FBI's FOIA public liaison, and/or seek dispute resolution services by contacting OGIS. (Ex. F.)

12. By letter dated September 23, 2025, OIP informed Plaintiff Free, following coordination with FBI personnel on the request, that the FBI had reopened the request as FBI FOIPA Request Number 1668952-001 to conduct a search for additional responsive records. OIP affirmed the FBI's withholdings of FOIA Exemptions 3, 6, 7(C), 7(D), and 7(E) in the production of previously processed records. Finally, OIP advised Plaintiff Free that if he was dissatisfied with its action on the appeal, he could file a lawsuit in federal district court or seek mediation services from OGIS. (Ex. G.)

13. By letter dated September 26, 2025, Plaintiff Free submitted an administrative appeal to OIP challenging the FBI's September 15, 2025 determination in response to the reopened request, FBI FOIPA Request Number 1668952-001. Plaintiff Free specifically challenged the FBI's request that he provide a Certificate of Identity to access the records of the deceased individual that was the subject of his request.[9]

---

[9] The FBI's request that a Certificate of Identity be provided was for the second part of the request, not the deceased individual (Glenn R. Miles) that was mentioned in the first

Additionally, Plaintiff Free asserted that as to the other subjects, which FBI contended were "third parties," a balancing test was required to determine whether the exemptions cited protect those individual's identities and stated that no blanket application of Exemptions 6 or 7 are permitted. (Ex. H.)

14. Additionally, on September 26, 2025, Plaintiffs Mendoza and Free filed the Complaint in this civil action. (Dkt. No. 1.)

15. By letter dated November 20, 2025, OIP acknowledged receipt of Plaintiff Free's appeal of the FBI's determination in FBI Request Number 1668952-001.[10] OIP advised Plaintiff Free that the appeal was received on October 8, 2025, and assigned it appeal number A-2026-00101. (Ex. I.)

16. The FBI indicated in the Parties Joint Case Management Report filed on March 18, 2026, that it had identified approximately 1,862 pages and 3:16 minutes of audio responsive to Plaintiff Free's request. The FBI also indicated that the investigation

---

part of the request. The FBI had already provided preprocessed records on Miles to Plaintiff Free. However, Plaintiff Free provided no proof of death or certification of identity authorizing disclosure of information concerning the third party mentioned in the second portion of the request and he failed to provide any additional information to support a public interest that would outweigh the privacy interest of the third party, should such records exist. Typically, unless proof of death is provided (or the FBI can determine the individual would be 100 years of age or older), the FBI must assume that the individual is living; therefore, in the absence of sufficient information supporting a public interest that outweighed the privacy interest of the third party, Plaintiff Free would have needed to provide a signed certification of identity from the third party authorizing disclosure of that third party's information to Plaintiff Free before the FBI could even conduct a search within the investigative file of the deceased individual and confirm or deny the existence of records responsive to the second part of the request.

[10] The U.S. federal government lapse in appropriations from October 1 – November 12, 2025 impacted OIP's notification of receipt of Plaintiff Free's appeal.

into Miles' death had been reopened, and therefore, the identified records were now subject to categorical withholding pursuant to FOIA Exemption 7(A). The FBI indicated it would need sufficient time to review the records for application of additional underlying exemptions pursuant to *Maydak.*[11] (Dkt. No. 28.) Following a scheduling conference on March 25, 2026, the Court entered an order requiring the FBI to review 500 pages of documents per month for the months of April and May 2026, and to complete its statutory exemption review and production of documents and audio by June 20, 2026. Additionally, the Court ordered the Defendant to provide a declaration in support of a motion for summary judgment by August 19, 2026. (Dkt. No. 30.)

### THE FBI'S *MAYDAK* REVIEW PRODUCTIONS

17. By letter dated April 30, 2026, the FBI advised Plaintiffs[12] that it had completed its first interim review of responsive records concerning the FBI investigation into Glenn R. Miles killed in the line of duty as a Customs Agent for the U.S. Treasury Department of Arizona (Miles). The FBI informed Plaintiffs that it identified 28 pages of segregable, public source information with all pages being released in part. The FBI's letter advised that all other material was categorically exempt from disclosure pursuant to FOIA Exemption 7(A), 5 U.S.C. § 552 (b)(7)(A), and underlying FOIA Exemptions 3, 6, 7(C), and 7(D), 5 U.S.C. § 552(b)(3), (b)(6), (b)(7)(C), and (b)(7)(D). Lastly, the FBI

---

[11] *Maydak v. U.S. Dep't of Just.*, 218 F.3d 760 (D.C. Cir. 2000), *reh'g en banc denied*, No. 98-5492 (D.C. Cir. Oct. 30, 2000)

[12] The FBI addressed its determination letters to both Plaintiffs Mendoza and Free in care of their attorney Daniel Melo of the Melo Law Firm; however, only Plaintiff Free submitted the request at issue.

advised Plaintiffs that if dissatisfied with the FBI's determination, they could appeal the FBI's response to OIP within 90 days of the date of its letter, contact the FBI's FOIA public liaison, or seek dispute resolution services by contacting OGIS.[13] (Ex. J.)

18. By letter dated May 29, 2026, the FBI advised Plaintiffs that it had completed its second interim review of responsive records. The FBI informed Plaintiffs that it did not identify any pages of segregable, public source information for this review. The FBI's letter advised that all material was categorically exempt from disclosure pursuant to FOIA Exemption 7(A), and underlying FOIA Exemptions 6 and 7(C). In addition to categorically withholding pursuant to FOIA Exemption 7(A), the FBI also informed Plaintiffs that media consisting of 3 minutes, 16 seconds of audio was being withheld in its entirety, pursuant to FOIA Exemption 7(E). Lastly, the FBI advised Plaintiffs that they could appeal the FBI's response to OIP within 90 days of the date of its letter, contact the FBI's FOIA public liaison, or seek dispute resolution services by contacting OGIS. (Ex. K.)

19. By letter dated June 18, 2026, the FBI advised Plaintiff that it had completed its final review of responsive records for applicable underlying exemptions as well as for segregability. The FBI informed Plaintiffs that it identified no pages of segregable, public source information during this final review. The FBI's letter advised

[13] On February 27, 2026, the FBI made an initial interim release of records to Plaintiff Free. These records are now subject to Exemption 7(A) as the investigation into Glenn R. Miles' death has been reopened. The FBI confirms that all records, excluding the segregable public source material, responsive to Plaintiff Free's request are subject to Exemption 7(A).

that all material was categorically exempt from disclosure pursuant to FOIA Exemption 7(A) and underlying FOIA Exemptions 3, 6, 7(C), 7(D), and 7(E). Lastly, the FBI advised Plaintiffs that if dissatisfied with the FBI's determination they could appeal the FBI's response to OIP within 90 days of the date of its letter, contact the FBI's FOIA public liaison, or seek dispute resolution services by contacting OGIS. (Ex. L.)

## PART II: THE FBI'S SEARCH FOR RECORDS CONCERNING THE MURDER OF GLENN R. MILES

20. The perfected portion[14] of Plaintiff Free's request, specifically the first portion of the request, seeks records concerning the murder of Glenn R. Miles (Miles), a subject reasonably expected to be indexed within the automated indices of the FBI's Central Records System (CRS). Given the comprehensive nature of the information contained therein (*see infra* at ¶ 21-22), the CRS is the FBI system of records where responsive records would reasonably be expected to be found.

### THE FBI'S CENTRAL RECORDS SYSTEM

21. The CRS is an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI while fulfilling its mission and integrated functions as a law

[14] A perfected FOIPA request is a written request for federal records that meets all agency requirements. A perfected FOIPA request triggers the statutory time limits for an agency to respond. The key components of a perfected FOIPA request include the following: receipt of the request by the correct FOIA office, inclusion of required details such as requester name and contact information, a reasonable description of the requested federal records that will allow agency staff to locate the requested records with a reasonable amount of effort, an authenticated DOJ-361 Certification of Identity form, and an agreement to pay fees, request for fee waiver, or other resolution of fee issues.

enforcement and intelligence agency, and in the fulfillment of its administrative and personnel functions. The CRS spans the entire FBI organization and encompasses the records of FBIHQ, FBI field offices, and FBI legal attaché offices worldwide.

22. The CRS consists of a numerical sequence of files, called FBI "classifications," which are organized according to designated subjects. The broad array of CRS file classification categories includes types of criminal conduct and investigations conducted by the FBI, as well as categorical subjects pertaining to counterterrorism, intelligence, counterintelligence, personnel, and administrative matters. For identification and retrieval purposes across the FBI, when a case file is opened, it is assigned a Universal Case File Number consisting of three sequential components: (a) the CRS file classification number; (b) the abbreviation of the FBI office of origin (OO) opening the file; and (c) the assigned individual case file number for the particular subject matter.[15] Within each case file, pertinent documents of interest are "serialized," or assigned a number in the order which the document is added to the file, typically in chronological order.

*The Central Records System's General Indices and Indexing*

23. The general indices to the CRS, comparable to a digital version of a library card catalog, function as the key to locating records within the enormous amount of information contained in the CRS. FBI personnel index information in the CRS by

[15] For example, in fictitious file number "11Z-HQ-56789," "11Z" indicates the file classification, "HQ" indicates that FBI Headquarters is the FBI OO, and "56789" indicates the assigned case specific file number.

individual (person), organization (entity, place, or thing), or activity or event (e.g., terrorist attack or bank robbery) when information is deemed of sufficient significance to warrant indexing for future retrieval.[16] The entries in the general indices fall into two categories:

a. Main index entry: A main index entry is created for each individual or non-individual (e.g., organization, event, or activity) that is the subject or focus of an investigation. Main subjects are identified in the case title of a file.

b. Reference index entry: A reference index entry is created for an individual or non-individual (e.g., organization, event, or activity) associated with an investigation, but who or which is not the main subject or focus of the investigation. Reference subjects are typically not identified in the case title of a file.

*Sentinel*

24. FBI personnel access the general indices through Sentinel, the FBI's case management system (since July 1, 2012). Prior to Sentinel, the FBI relied on a case

---

[16] FBI's Records and Information Management Policy mandates that FBI personnel enter all federal records into an authorized FBI recordkeeping system. FBI personnel are responsible for managing records they create and receive, determining the record status for each, and importing records into an electronic recordkeeping system such as the Sentinel case management system. *See* FBI Records and Information Management Policy Guide, 1321PG (May 31, 2024) at 11-12 (Section 2.9), available at https://vault.fbi.gov/records-and-information-management-policy-guide-1321pg/Records%20and%20Information%20Management%20Policy%20Guide%201321PG%20Part%2001%20%28Final%29/view (last accessed August 19, 2026).

management system known as Automated Case Support (ACS).[17] On August 1, 2018, the FBI decommissioned ACS and the ACS indexed data was migrated into Sentinel, where these indices are accessible and searchable through Sentinel's search function. In addition to providing access to the information previously indexed into ACS, Sentinel provides a means for FBI personnel to access the FBI's older manual indices, when necessary.

25. FBI personnel rely on Sentinel to locate records and other types of documents to fulfill essential functions, such as conducting criminal, counterterrorism, and national security investigations; conducting background investigations; performing citizenship and employment queries; and administering security screenings, to include presidential protection. Sentinel's index search methodology and function allow FBI personnel to query the CRS for indexed subjects in case files.

26. However, the identification of records indexed to the subject of a FOIA request does not automatically mean the indexed records are responsive. Index searches using the search functions available in Sentinel are the means by which potentially

---

[17] As part of the ACS implementation process, over 105 million pre-existing CRS records were converted from automated systems previously utilized by the FBI into a single, consolidated case management system accessible by all FBI offices. Additionally, information from the ELSUR indices is included within the CRS and serialized within the files available in Sentinel. Prior to the implementation of ACS, the FBI relied on manual indices to the CRS, which originally consisted of 3"x 5" paper index cards, filed alphabetically based on subject matter (individual, event, organization, or other topic of investigative or administrative interest to the FBI) and housed across the FBI in various locations. The index cards contained the subject of interest and the file number(s) where the subject's information was located. The FBI's 1995 ACS consolidation did not capture all the FBI's manual indices and, as a result, not all the FBI's manual indices migrated with ACS into Sentinel in August 2018. Instead, the manual indices were digitized, using optical character recognition technology, and Sentinel provides a conduit to access and search the manual indices electronically.

responsive records are located, but ultimately, a FOIPA analyst must review potentially responsive records against the specific parameters of individual requests. Responsiveness determinations are made once indexed records are gathered, analyzed, and sorted by FOIPA analysts who then make informed scoping decisions to determine the total pool of records responsive to an individual request.

## ADEQUACY OF SEARCH

### *Central Records System Search and Results*

27. The FBI determined that a search of the CRS automated indices, available within Sentinel per its search functions, represented the most reasonable means for the FBI to locate records potentially responsive to Plaintiff Free's FOIA request. This is because, as described above, these general indices provide access to a comprehensive, agency-wide set of indexed data on a broad array of investigative and administrative subjects and consist of millions of searchable records that are updated daily with newly indexed information. The requested subject matter predates and/or overlaps the implementation of both Sentinel and ACS; therefore, a Manual indices search was also required. The FBI built on its Manual index search by conducting an index search of both the ACS and Sentinel indices to ensure it captured all relevant data indexed after the implementation of ACS and Sentinel.

28. In response to Plaintiff Free's request, the FBI conducted a search for main and reference entries[18] in the Sentinel, ACS, and the Manual indices via Sentinel's search

[18] *See supra* at ¶ 32 for an explanation of main and reference entries. Additionally, the FBI's FOIPA Addendum, attached to FBI determination letters, explains that the FBI's

function. The FBI searched the indices using the following terms: "Glenn Miles" and "Miles, Glenn" employing a search cut-off date[19] of May 27, 2025, which is the date of the FBI's initial search for records.[20] The FBI located responsive records as a result of this search.

29. Plaintiffs have provided no information for the FBI to reasonably conclude that records responsive under the FOIA would reside outside the CRS. There is no indication from the CRS search efforts that responsive records would reside in any other FBI system or location. Thus, the FBI has searched all locations and files reasonably likely to contain responsive records, and there is no basis for the FBI to conclude that a search elsewhere would reasonably be expected to locate responsive records subject to the FOIA.

**PART III: JUSTIFICATION FOR NON-DISCLOSURE UNDER THE FOIA**

30. The FBI categorically denied the responsive records pursuant to FOIA Exemption 7(A). The FBI determined that disclosure of the records could reasonably be

---

standard search policy is a search for main entity records in the CRS. A standard search does not include reference entity records, administrative records of previous FOIPA requests, or civil litigation files; however, the search will include such records if they are specifically articulated in the request. See FBI FOIPA Addendum, Part 3(i).

[19] A search cut-off date is the date that the agency commences a search for records responsive to a FOIPA request. Generally, the FBI uses a search cut-off date to delineate the scope of a FOIPA request by treating records created after that date as not responsive to the request. See 28 C.F.R. § 16.4(a). The Department of Justice (DOJ) provides notice of the use of a search cut-off date in its published FOIA reference guide on its FOIA website (https://www.justice.gov/oip/doj-guide-freedom-information-act-0) (last accessed August 19, 2026).

[20] A search using these terms within the Sentinel, ACS, and Manual indices would also capture any indexed entries containing the subject's middle name or initial.

expected to interfere with pending law enforcement proceedings. In addition, the FBI completed a segregability review for any non-exempt, public source information and asserted underlying FOIA Exemptions 3, 6, 7(C), 7(D), and 7(E) to protect the FOIA exempt portions of the responsive records within the pending investigative files.

**EXEMPTION 7 THRESHOLD**

31. Before an agency can invoke any of the harms enumerated in Exemption (b)(7), it must first demonstrate that the records or information at issue were compiled for law enforcement purposes. Pursuant to 28 U.S.C. §§ 533, 534, and Executive Order 12,333 as implemented by the Attorney General's Guidelines for Domestic FBI Operations (AGG-DOM) and 28 CFR § 0.85, the FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to national security, and further the foreign intelligence objectives of the United States. Under this investigative authority, the responsive records herein were compiled in furtherance of the FBI's investigation of the homicide of U.S. Customs Patrol Officer Miles.[21] On February 21, 1986, Miles was killed while working on the Tohono O'odham Indian Reservation[22] near the village of San Miguel, Arizona. Considering these records were compiled to

[21] The unlawful slaying of federal law enforcement is subject to criminal statutes 18 U.S.C. § 1114 – Protection of Officers and 18 U.S.C. § 1111 – Punishment for Murder.
[22] Previously, the lands of the Tohono O'odham people were referred to as the Papago Indian Reservation.

document the FBI's investigation of the murder of Miles, the FBI determined they were compiled for law enforcement purposes.

**EXEMPTION 7(A) – PENDING ENFORCEMENT PROCEEDINGS**

32. Exemption 7(A) protects "records or information compiled for law enforcement purposes [when disclosure] could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A).

33. Application of Exemption 7(A) requires the existence of law enforcement records, a pending or prospective law enforcement proceeding, and a determination that release of the information could reasonably be expected to interfere with the enforcement proceeding.

34. Through searches of its records, the FBI located pending investigative files pertaining to the homicide of Miles. The subjects of the responsive investigative files have not been apprehended and remain fugitives.

35. The FBI's RIDS contacted the case agent for the responsive investigatory files to determine whether the release of the information within these files would cause harm to pending enforcement proceedings. The FBI's case agent was adamant in precluding the release of these records because information and evidence contained within the FBI's investigatory files could be used in the government's future prosecution of the fugitives. Thus, release of any of this information would be premature and allow for these fugitives to potentially prepare alibis, intimidate potential witnesses, and/or destroy evidence of wrongdoing (through their own efforts or by proxy) to thwart the United States' attempts to prosecute them.

36. The FBI applied Exemption 7(A) to protect the documents responsive to Plaintiff Free's FOIA request for records related to the murder investigation of Miles. As previously demonstrated, these are law enforcement records compiled during a criminal investigation involving the unlawful murder of a federal law enforcement officer. Additionally, the FBI has determined that release of the records would reasonably interfere with potential law enforcement proceedings. As a result, the FBI is categorically denying access to these records under FOIA Exemption 7(A) because the production of such records could reasonably be expected to interfere with law enforcement proceedings for the reasons set forth above.

37. The application of Exemption 7(A) in litigation involves a three-part process requiring the government to review each document withheld on a document-by-document basis; to group the documents into functional categories and to describe the categories; and to explain why release of documents in each category would interfere with pending or prospective law enforcement proceedings. The FBI conducted a document-by-document review in this case to determine the applicability of Exemption 7(A), in addition to all underlying exemptions, and has grouped the documents into functional categories. The following paragraphs describe the functional categories and explain why release of responsive documents would interfere with prospective law enforcement proceedings.

## FUNCTIONAL CATEGORIES OF INFORMATION

38. The FBI has reviewed and grouped the responsive records into functional categories for purposes of demonstrating why the information is exempt from disclosure

under FOIA Exemption 7(A). Each responsive document that was withheld falls into one or more of the functional categories described in the following paragraphs. For example, one document may serve several purposes and may contain multiple categories of information, such as witness statements, administrative directions or evidentiary materials. This document could, therefore, be included in multiple categories as could the information contained within the document. Here, the functional categories include:

| **Functional Category 1 (F.C. 1): Evidentiary/Investigative Materials** | |
|---|---|
| This category includes copies of records or evidence, and derivative communications discussing or incorporating evidence. A derivative communication describes, verbatim or in summary, the contents of the original record, how it was obtained, and how it relates to the investigation. Other derivative communications report this information to other FBI Field Offices or other law enforcement agencies, either to advise them of the progress of the investigation, or to elicit their assistance in handling investigative leads. The following subparagraphs describe the types of evidentiary material in the responsive records and the anticipated harm that could reasonably result from the release of such materials. | |
| Information Concerning Physical and Documentary Evidence | Information concerning physical and documentary evidence in this file may include records obtained through and/or summarizing information gathered through searches, seizures, surveillance, confidential source/witness interviews, Federal Grand Jury subpoenas, laboratory reports, and any other law enforcement/intelligence gathering activities. To more fully describe these records could reasonably lead to disclosure of the nature of the pending investigative efforts/programs to which these records pertain. Such a disclosure could be detrimental to success of the pending and prospective enforcement proceedings by permitting subjects to estimate the scope of the FBI's investigation and judge whether their activities are likely to be detected; allowing investigative subjects to discern the FBI's investigative strategies and employ countermeasures to avoid detection and disruption by law enforcement; and/or allow investigative targets to formulate strategies to contradict evidence to be presented in Court proceedings. |
| Exchange of Information between | Release of records documenting and detailing the exchange of information among law enforcement partners will disclose |

| | |
|---|---|
| Various Federal Agencies | investigative information developed by various agencies that have cooperated with and provided information and records to the FBI in a pending investigation. This information was gathered to help identify subjects, suspects or other individuals of potential investigative interest and to assist in locating witnesses and/or confidential sources. Inherent in this cooperative effort is the mutual understanding that information provided to the FBI by those agencies will not be prematurely released. Moreover, release of this information would identify the investigative interest in particular individuals and subject witnesses and confidential sources to potential harassment, intimidation and physical or mental harm. |
| **Functional Category 2 (F.C. 2): Administrative Materials** | |
| Materials that fall into this category include items such as case captions, serial numbers, identities of FBI field offices involved, dates of investigation, and detailed instructions designed to ensure that investigative procedures are conducted within the appropriate FBI and DOJ guidelines. The following subparagraphs describe the types of administrative materials at issue and the anticipated harm that could reasonably result from the release of such materials. In many instances, administrative information is contained in correspondence or documents that also fall into other categories. Therefore, release of details with respect to this category of information would also reveal the investigative interests of the FBI and could enable suspects to discern a "road map" of the investigations. | |
| Reporting Communications | These communications permit the FBI and/or other agencies to monitor the progress of the investigation and to facilitate its conduct. These communications may reveal or confirm the cooperation of other local, state, or federal agencies in the investigation. They are replete with detailed information about the investigative activities as well as detailed information about potential witnesses and confidential sources to be interviewed. Additionally, they contain background information about third-party individuals, the origin of pertinent information that ties them to the investigation, their connection with the subjects, and their relationship with a pending investigation. The release of this information would reveal the investigative steps taken to obtain witness and confidential source interviews, techniques and investigative methods used to compile and/or solicit information from various sources, and the perceived weaknesses in the investigation. The release of this information would reveal the nature and scope of a pending investigation. |

| | |
|---|---|
| Administrative Instructions | This type of information, whether it originates in communications from DOJ, the FBI, or other domestic or foreign law enforcement agencies, if released to a knowledgeable person, would disclose specific investigative procedures and strategies employed in this investigation. Release of this information would thus permit the subjects of these investigations to anticipate and possibly alter or negate incriminating evidence which could be used in future prosecutions/investigative efforts. Specific examples of these instructions include the setting out of investigative guidelines and requests for specific investigative inquiries at various FBI field offices or other government agencies. These instructions are commonly referred to as "investigative leads" and are set forth throughout the course of FBI investigations. |
| **Public Source Materials** | |
| The FBI segregated and released one category of information from the responsive pending files – public source material, in this case, certain newspaper articles because it was determined that such information would not interfere with any pending or prospective enforcement proceedings. With the exception of this public source information, there is no other reasonably segregable portion of any document that can be released from the pending investigative files responsive to Plaintiff Free's request. | |

## TYPES OF LAW ENFORCEMENT RECORDS

39. Providing a document-by-document description or listing of the records responsive to Plaintiff Free's request falling in the categorically denied records would undermine the very interests that the FBI seeks to protect under Exemption 7(A), in addition to the other exemptions identified below. To protect these interests, the FBI has described the types of responsive records from the pending investigative files, which are being withheld in full pursuant to FOIA Exemption 7(A), and indicated which of the above described functional categories apply to each type of document. The pending investigative files contain the following types of records:

| Document Type | Description/Purpose | F.C. 1 | F.C. 2 |
|---|---|---|---|
| Audio Recordings | A microcassette test tape was created to complete audio enhancement and analysis of the microcassette and cassette maintained by the homicide victim on the night of his murder.[23] | X | X |
| Evidence Logs / Chain of Custody | These documents track evidence within an investigation. | X | X |
| FBI Letters | The FBI letter is the formal correspondence format used to communicate with non-FBI entities, including but not limited to, other federal agencies, other non-federal law enforcement agencies, commercial businesses, and/or private citizens. Its format is identical to business letters utilized by commercial agencies, except that it contains the FBI Seal at the top of the first page. | | X |
| FBI Records Checks | These are computerized print-outs of the results of checks of databases concerning FBI records, local law enforcement records, and/or business records. The information from these records checks is often incorporated into Investigative Reports and Teletypes for lead purposes. | X | X |
| FD-340, 1A Envelopes | These envelopes are used to organize and store documents that need to be stored separately from the FBI file to which they are attached, due to their size. They usually contain handwritten notes of interviews, photographs, diagrams, notes, and other various evidentiary documents. | X | X |
| FD-5 Serial Charge out Forms | These forms are used when necessary to remove a serial from a case file. | | X |

[23] The microcassette test tape is 3 minutes, 16 seconds in length. The microcassette and cassette tape maintained by the homicide victim on the night of his murder are a combined 51 minutes, 50 seconds in length.

| Document Type | Description/Purpose | F.C. 1 | F.C. 2 |
|---|---|---|---|
| Federal Grand Jury Subpoenas/Subpoenaed Information | These documents consist of the information collected as a result of Federal Grand Jury subpoenas. This information can be used as evidence in Grand Jury proceedings or other court proceedings. This information can also be incorporated in FBI documents that may be used to disseminate intelligence/investigative information and can be utilized to set leads in furtherance of the FBI's investigative efforts. | X | X |
| Foreign Government Information | These are documents that were provided to the FBI by foreign governments. This information within these documents can be incorporated in FBI documents which disseminate intelligence/investigative information, and can be utilized to set leads in furtherance of the FBI's investigative efforts | X | X |
| Handwritten Notes | These are the original handwritten notes of FBI personnel who conducted work during the FBI investigation. | X | X |
| Handwritten Interview Notes Transposed to FD-302s | These are the original handwritten notes of FBI personnel who conducted interviews during the FBI investigation. These notes are almost always transposed into FD-302s and are utilized by the FBI in the same manner. | X | X |
| Interview Forms (FD-302) | FD-302s document FBI interviews. Such evidence and/or interview information may later be used as testimony or evidence in court proceedings/trials. Additionally, these evidence/interview forms are often incorporated in other FBI documents which disseminate investigative information and can be utilized to set leads in furtherance of the FBI's investigative efforts. Handwritten | X | X |

| Document Type | Description/Purpose | F.C. 1 | F.C. 2 |
|---|---|---|---|
| | interview notes of FBI personnel who conducted interviews during FBI investigations are typically transposed into FD-302s and are utilized by the FBI in the same manner. | | |
| Laboratory Documents | These are documents containing tests, results, and analysis from FBI Laboratory examination. | X | X |
| Memorandum | These are ordinarily communications to DOJ officials, from one person to another at FBIHQ, or from one person to another within an FBI field office. They serve to assist in the overall supervision of a case by summarizing pertinent details of an investigation. | X | |
| Miscellaneous Administrative Documents | The FBI uses various types of forms throughout a criminal investigation, including storage envelopes, bulky exhibit cover sheets, transmittal forms (i.e., facsimile cover sheets), letters, and routing slips. Also included are forms (FD-5) that are placed in a file to document when a serial has been removed and placed elsewhere. Other documents in this category include notes, memoranda, letters, telegrams, and other attachments of an administrative nature which do not fall into an official government format. | | X |
| Other Evidentiary Documents | This category consists of evidentiary documents gathered during the course of FBI investigations. The information in these documents is often incorporated in other FBI documents which disseminate investigative information and can be utilized to set leads in furtherance of the FBI's investigative efforts. | X | X |
| Photographs | Recorded images that may provide leads to the investigation, and/or were seized and are evidentiary in nature. | X | X |

| Document Type | Description/Purpose | F.C. 1 | F.C. 2 |
|---|---|---|---|
| | Photographs are also often created by the FBI when documenting locations of evidence, evidence, crime scenes, autopsies, and for other investigatory reasons. | | |
| Postmortem Examination Report | This document is the postmortem examination report completed to research, set, and further investigative leads. | X | X |
| Source Documents/Information | Information provided to the FBI and/or law enforcement by a source. The information and/or documents may later be used as testimony or evidence in court proceedings/trials. Additionally, this information can be incorporated in other FBI documents that may be used to disseminate intelligence/investigative information and can be utilized to set leads in furtherance of the FBI's investigative efforts. | X | X |
| State and Local Law Enforcement Documents | This category consists of documents provided to the FBI by state and local law enforcement agencies. These documents can be used as evidence in court proceedings, are often incorporated in other FBI documents which disseminate intelligence/investigative information, and can be utilized to set leads in furtherance of the FBI's investigative efforts. | X | X |
| Teletypes | Teletypes are an electronic means of disseminating law enforcement/intelligence information between FBI field offices, FBIHQ and the United States intelligence and law enforcement agencies. | X | X |
| Third-Party Information | Documents or information received from third parties who provided investigative information to the FBI. | X | X |

40. Material responsive to Plaintiff Free's request was located in, or associated with, the investigative files of an ongoing investigation. Release of any information could reasonably be expected to interfere with these pending criminal law enforcement proceedings, as well as potential enforcement proceedings such as spin-off investigations and/or prosecutions that may result from the investigation. Until the fugitives are located and the potential and pending enforcement proceedings are concluded and resolved, no information contained in these files can be released to Plaintiffs without interfering in pending or prospective enforcement proceedings.

## Reasonable Expectation of Interference

41. In processing requests under the FOIA, the FBI has established procedures allowing it to implement the FOIA as efficiently as possible. When a request is received for records related to an ongoing FBI investigation, the FBI commonly asserts FOIA Exemption 7(A) in response to such a request, but the FBI segregates and releases information related to the pending investigation where release would not jeopardize future investigative or prosecutive efforts. As part of the FBI's document-by-document review of the responsive records for the preparation of this declaration, the FBI located and released to Plaintiffs all non-exempt public source material responsive to the subject of the FOIA request.[24] (Ex. J.) With the exception of the previously released non-exempt,

[24] Prior to filing this declaration, the FBI provided Plaintiff Free with a release of all identified non-exempt public source material consisting of 28 pages of information. The only withholdings on the 28 pages of public source newspaper articles were to protect the names and identifying information of FBI personnel noted within the file stamps. The

public source information, no additional material from the responsive records can be released without jeopardizing further investigation and/or prosecutive efforts.

42. Any release of information from these files to Plaintiffs would be premature and likely to cause harm. While the pending investigative records at issue pertain to the uncaptured subjects associated with the unlawful slaying of Miles, the records, by their nature, also pertain to other living targets of investigative interest who are/were associated with this publicized murder investigation and disclosure would reveal the scope of pending FBI investigative efforts. Release of these records would allow targeted individuals to critically analyze documents concerning these investigations. Such individuals would then possess the unique advantage of knowing the details surrounding the potential criminal activities, the identities of potential witnesses, and the direct and circumstantial evidence of the potential criminal activities. These individuals could therefore use the released information to their advantage to destroy evidence, intimidate potential witnesses, and/or evade the FBI's investigative efforts. In this regard, the following foreseeable harms from the release of information contained in these documents exist:

a. the identification of individuals, sources, and potential witnesses who possess information related to the investigation and possible harm to, or intimidation of such individuals;

names and identifying information of FBI personnel were withheld pursuant to FOIA Exemptions 6 and 7(C). *See* ¶¶ 52-54, *infra*.

b. the use of released information to counteract evidence developed by investigators, to alter or destroy potential evidence, or to create false evidence;

c. the use of information released to uncover the government's prosecution and trial strategy; and

d. the use of released information by any subject of the investigations to assess the likelihood that he or she may be prosecuted and/or convicted in connection with this investigation.

43. Furthermore, the release of this information could allow other third parties to interfere with the pending proceedings by providing them the means to harass/intimidate witnesses, investigators and/or prosecutors, and/or allow them the opportunity to create false or corrupt valuable evidence, calling into question the validity of facts gathered during FBI investigations. This is because once a release is made to Plaintiffs under the FOIA, Plaintiff Free's use and dissemination of the information to third parties is unrestricted.

**ASSERTION OF UNDERLYING FOIA EXEMPTIONS**

44. The information responsive to Plaintiff Free's request has been denied in its entirety pursuant to FOIA Exemption 7(A). In light of the D.C. Circuit's ruling in *Maydak*, 218 F.3d 760, the FBI also asserted FOIA Exemptions 3, 6, 7(C), 7(D), and 7(E) to protect the FOIA exempt portions of the responsive records within the pending investigative files. In the following paragraphs, the FBI justifies its application of these underlying exemptions, to the extent public disclosure and discussion of the applicable

exemptions will not adversely affect the active, ongoing criminal investigations in this case by somehow revealing the nature, scope, focus, and conduct of the investigations. At this time, public disclosure of more detailed information on the application of exemptions would undermine the very interests the FBI seeks to protect through its assertion of Exemption 7(A). The FBI can provide additional explanation *in camera, ex parte* upon the Court's request.

**FOIA EXEMPTION 3 – INFORMATION PROTECTED BY STATUTE**

45. FOIA Exemption 3 exempts from disclosure information "specifically exempted from disclosure by statute . . . if that statute (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (A)(ii) establishes particular criteria from withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552 (b)(3). The OPEN FOIA Act of 2009 established an additional requirement that any statute "enacted after the date of enactment of the OPEN FOIA Act of 2009, [must] specifically cite[] to this paragraph" in order to qualify under Exemption 3.

*Federal Grand Jury Information – Federal Rules of Criminal Procedure, Rule 6(e)*

46. The FBI asserted Exemption (b)(3) to protect Federal Grand Jury (FGJ) information pursuant to Federal Rule of Criminal Procedure 6(e).[25] As relevant to 5

[25] As prescribed by 18 U.S.C. § 3771 (subsequently repealed by Pub.L. 100-702, Title IV, § 404(a)(1) (Nov. 19, 1988) and replaced by 28 U.S.C. § 2074), proposed rules become effective ninety days after the Chief Justice reports them to Congress. By order of April 26, 1976, the Supreme Court adopted amendments to the Federal Rules of Criminal Procedure which included Rule 6(e) and reported the amendments to Congress. Congress voted to delay the effective date of several of the proposed rules, to include Rule 6(e),

U.S.C. § 552(b)(3)(B), Rule 6(e) is a statute enacted before the date of enactment of the OPEN FOIA Act of 2009.[26] It is well established Rule 6(e) embodies a broad, sweeping policy of preserving the secrecy of grand jury material regardless of the substance in which the material is contained. Records responsive to Plaintiff Free's request detail information about one or more federal grand juries empaneled in relation to the investigation at issue and were clearly marked on the face of the documents as relating to a federal grand jury. Specifically, the responsive records are FBI documents containing detailed information concerning the FGJ subpoenas, including to whom they were directed and the type of information subpoenaed. Additionally, these documents include summaries and analysis of the information subpoenaed pursuant to FGJ subpoenas. This information reveals the identities of witnesses and producing parties, the sources of information relied on to develop the facts of the grand jury investigation, the types of evidence the grand jury sought and reviewed, and the overall focus and strategy of the grand jury investigation. Where the FBI located this information within other FBI documents, it was clearly marked on the face of the documents as FGJ information.

47. Wherever the FBI protected the above category of information, it found a clear nexus to federal grand jury proceedings on the face of the responsive documents. Disclosure of this information would clearly violate the secrecy of the grand jury

---

"until August 1, 1977, or until and to the extent approved by Act of Congress, whichever is earlier." Pub.L. No. 94-349 § 1, 90 Stat. 822 (1976). Subsequently, Congress, by statute, enacted a modified version of Rule 6(e). *See* Pub.L. No. 95-78, § 2(a), 91 Stat. 319 (1977), FED. R. CRIM. P. 6(e).

[26] The OPEN FOIA Act of 2009 was enacted October 28, 2009. *See* Pub.L. 111-83, 123 Stat. 2142, 2184.

proceedings and could reveal the inner workings of a federal grand jury, which the FBI is precluded from disclosing. This is because the information in the above category relates to the information and evidence requested, collected, and reviewed by a federal grand jury in the scope of its investigation. Thus, the FBI properly withheld this information pursuant to Exemption (b)(3), in conjunction with Rule 6(e).

**FOIA EXEMPTIONS (B)(6) AND (B)(7)(C)**
**UNWARRANTED INVASION OF PERSONAL PRIVACY**

48. Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). All information that applies to a particular person falls within the scope of Exemption 6.

49. Exemption 7(C) similarly exempts from disclosure "records or information compiled for law enforcement purposes [when disclosure] could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).[27]

50. When withholding information pursuant to these two exemptions, the FBI is required to balance the privacy interests of the individuals mentioned in these records against any public interest in disclosure. In asserting these exemptions, each piece of information was scrutinized to determine the nature and strength of the privacy interest of

[27] The practice of the FBI is to assert Exemption 6 in conjunction with Exemption 7(C). Although the balancing test for Exemption 6 uses a "would constitute a clearly unwarranted invasion of personal privacy" standard and the test for Exemption 7(C) uses the lower standard of "could reasonably be expected to constitute an unwarranted invasion of personal privacy," the analysis and balancing required by both exemptions is sufficiently similar to warrant a consolidated discussion. The privacy interests are balanced against the public's interest in disclosure under both exemptions.

every individual whose name and/or identifying information appears in the documents at issue here. When withholding the information, the individual's privacy interest was balanced against the public's interest in disclosure. For purposes of these exemptions, a public interest exists only when information about an individual, their name, or their identifying information[28] would shed light on the FBI's performance of its mission to protect the American people and uphold the Constitution of the United States, and its function to: protect the United States from terrorist attack; protect the United States against foreign intelligence, espionage, and nefarious cyber operations; combat significant criminal cyber activity, public corruption, transnational criminal enterprises, white-collar crime, and violent crime; and protect civil rights. In each instance wherein information was withheld in the records at issue here pursuant to Exemptions 6 and 7(C), the FBI determined that the individuals' privacy interests outweighed any public interest in disclosure.

51. Furthermore, considering privacy concerns are typically obviated once an individual is deceased,[29] when processing this FOIA request, the FBI took several steps to ascertain the current life/death status of the individuals whose names are withheld. The FBI used the birth date and/or the date of the investigation to determine whether an individual is living or deceased, to the extent either or both of these pieces of information

---

[28] Hereafter, identifying information includes the following: dates of birth, places of birth, residences, telephone numbers, social security numbers, and FBI numbers (singular, internal numbers assigned to investigative suspects).

[29] In some circumstances, surviving relatives of a deceased individual retain privacy interests in their information, even after the individual's death. *See generally National Archives v. Favish*, 124 S. Ct. 1570 (2004).

were discernable from the file.[30] The date of birth was used to apply the judicially recognized "100-year rule," i.e., if the individual was born more than 100 years ago, the FBI presumes that he or she is dead and the name was released. The FBI also used institutional knowledge gained from prior FOIA requests or internal records. By using institutional knowledge, the FBI can identify with sufficient certainty the life/death status of certain individuals. If the FBI was unable to determine the life/death status of an individual through the use of these methods, the name of the individual was withheld pursuant to Exemptions 6 and 7(C), when it found disclosure would constitute an unwarranted invasion of those individuals' privacy should they still be living, and no public interest would be served in releasing the names. It is also the FBI's policy to release names of high-ranking FBI officials as well as individuals in public positions, as they have diminished privacy rights while acting in their official capacity. This policy was applied to the individual's position at the time of the documents, and not the present.

*Names and Identifying Information of FBI Special Agents and Professional Staff*

52. Pursuant to Exemptions 6 and 7(C), the FBI withheld the names, initials, and other identifying information of FBI Special Agents (SA) and professional staff. These FBI SAs and professional staff were responsible for conducting, supervising, and/or maintaining the investigation and associated administrative activities related to the homicide of Miles, reflected in the documents responsive to Plaintiff Free's request. These responsibilities included, but are not limited to, the following:

---

[30] The subject of the request, Miles, is deceased and his name and identifying information were not withheld under Exemptions 6 and 7(C).

coordinating/completing tasks in support of the FBI's investigative and administrative functions, compiling information, conducting interviews, and/or reporting on the status of the investigation.

53. *FBI Special Agents.* Assignments of SAs to any particular investigation are not by choice. Publicity, adverse or otherwise, arising from a particular investigation and/or use of specific FBI investigative techniques, may seriously prejudice their effectiveness in conducting other investigations or performing their day-to-day work. The privacy consideration is also applied to protect FBI SAs, as individuals, from unnecessary, unofficial questioning as to the conduct of this or other investigations/investigative activities, whether or not they are currently employed by the FBI. FBI SAs conduct official inquiries into various criminal and national security violation cases. The publicity associated with the release of an SA's identity in connection with a particular investigation could trigger hostility toward a particular SA. During an investigation, an SA may engage with all strata of society, conducting searches and making arrests, both of which result in reasonable but nonetheless serious disturbances to people and their lives. Individuals targeted by such investigation, and/or those sympathetic to those targeted, could seek to inflict violence on an SA based on their participation in an investigation. This is because an individual targeted by such law enforcement actions may carry a grudge against those involved with the investigation, which may last for years. These individuals may seek revenge on SAs and other federal employees involved in a particular investigation. There is no public interest served by disclosing the SAs' identities because their identities would not, themselves, significantly

increase the public's understanding of the FBI's operations and activities. Thus, disclosure of this information would constitute a clearly unwarranted invasion of their personal privacy; and the FBI properly withheld the names and identifying information of FBI SAs pursuant to Exemptions 6 and 7(C).

54. *FBI Professional Staff.* The FBI also withheld the names and initials of FBI professional staff pursuant to Exemptions 6 and 7(C). These FBI professional staff were assigned to handle tasks related to the administrative activities associated with the investigation into the murder of Miles. Similar to FBI SAs, these FBI employees could be targeted for reprisal based on their involvement in this specific investigation. Furthermore, these FBI professional staff were in positions of access to information regarding official law enforcement investigations and therefore could become targets of harassing inquiries for unauthorized access to investigations if their identities were released. Thus, these individuals maintain substantial privacy interests in not having their identities disclosed. In contrast, the FBI concluded that no public interest would be served by disclosing the identities of these FBI professional staff to the general public because their identities would not, themselves, significantly increase the public's understanding of the FBI's operations and activities. Accordingly, after balancing these professional staff employees' substantial privacy interests against the non-existent public interest, the FBI determined disclosure of their identities would constitute a clearly unwarranted invasion of their personal privacy. Therefore, the FBI properly withheld the names and identifying information of FBI professional staff pursuant to Exemptions 6 and 7(C).

*Names and Identifying Information of Third Parties who Provided Information*

55. The FBI withheld the names and identifying information of third-party individuals who were interviewed and provided information by other means to the FBI during its investigation into the murder of Miles. The identifying information of, and information provided by, these third-party individuals appears within the FBI's files because these individuals willingly divulged information relevant to FBI investigative efforts. These individuals were not of investigative interest to the FBI. Plaintiffs have not provided a privacy waiver from the third parties authorizing release of their information, nor have Plaintiffs supplied proof of death; therefore, these individuals maintain substantial and legitimate privacy interests in not having their cooperation or connection to FBI law enforcement matters disclosed. Considering the FBI is an investigative and intelligence agency, disclosure of these individuals' names and/or identifying information in connection with FBI records carries an extremely negative connotation.

56. Disclosure of the identities of individuals who willingly provide information to the FBI could subject these individuals to harassment or embarrassment, undue public attention, and/or unwanted inquiries for information related to their assistance. They could also be targeted for retaliation by investigative subjects or by those who simply disparage cooperation with law enforcement. Exposure of a third party's cooperation with law enforcement could also lead to legal or economic detriment, negative professional and social repercussions, possible physical harm, or even death. Thus, the FBI has determined these individuals maintain substantial privacy interests in not having their identities disclosed.

57. In contrast, the FBI could identify no public interest in the disclosure of this information because disclosure of these individual's names and identifying information would not shed light on or significantly increase the public's understanding of the operations and activities of the FBI. The FBI concluded the non-existent public interest here was insufficient to override these individuals' substantial privacy interests; therefore, the FBI properly protected these individuals' privacy interests pursuant to Exemptions 6 and 7(C). The FBI is also relying on Exemption 7(D) to protect this information in many instances.

*Names and Identifying Information of Third Parties Merely Mentioned*

58. Within another category of Exemptions 6 and 7(C), the FBI withheld the names and identifying information of third parties who were merely mentioned in the investigative records responsive to Plaintiff Free's request.[31] The FBI has information about these third parties in its files because these individuals were tangentially mentioned in conjunction with FBI investigative efforts. These individuals were not of investigative interest to the FBI. These third parties maintain substantial and legitimate privacy interests in not having this information disclosed and thus, being connected with an FBI law enforcement matter. Considering the FBI is an investigative and intelligence agency, disclosure of these third parties' names and identifying information in connection an FBI

[31] In addition to categorical withholding under Exemption 7(A), media consisting of 51 minutes, 50 seconds of audio is being withheld in its entirety pursuant to FOIA Exemptions 6 and 7(C). The FBI utilized Exemptions 6 and 7(C) to withhold names and identifying information of third parties merely mentioned on the microcassette and cassette maintained by the homicide victim on the night of his murder.

investigation carries an extremely negative connotation. Disclosure of their identities would subject these individuals to possible harassment or criticism and focus derogatory inferences and suspicion on them. The FBI then considered whether there was any public interest that would override these privacy interests and concluded that disclosing information about individuals who were merely mentioned in an FBI investigative file would not significantly increase the public's understanding of the operations and activities of the FBI. Accordingly, the FBI properly protected these individuals' privacy interests pursuant to FOIA Exemptions 6 and 7(C).

*Names and Other Identifying Information of Third Parties of Investigative Interest*

59. The FBI withheld the names and other identifying information of third parties who were of investigative interest to the FBI. Being identified as a subject of FBI investigative interest carries a strong negative connotation and a stigma, whether or not these individuals ever committed criminal acts. Release of the identities of these individuals to the public could subject them to harassment or embarrassment, as well as undue public attention. Furthermore, it could result in professional and social repercussions, due to resulting negative stigmas. Accordingly, the FBI determined these individuals maintain substantial privacy interests in not having their identities disclosed. In contrast, disclosing personal information about these individuals would not significantly increase the public's understanding of the FBI's performance of its mission and so the FBI concluded that there was no public interest here sufficient to override these individuals' substantial privacy interests. For these reasons, the FBI properly withheld this information pursuant to Exemptions 6 and 7(C).

*Names and Identifying Information of Personnel from Non-FBI Federal Agencies*

60. Pursuant to Exemptions 6 and 7(C), the FBI withheld the names and identifying information of personnel from non-FBI federal government agencies who provided information to, or otherwise assisted, the FBI in its investigation into the murder of Miles.[32] The rationale for protecting the identities of other government employees is the same as the rationale for protecting the identities of FBI employees. See *supra* at ¶¶ 52-54. Publicity, adverse or otherwise, concerning the assistance of these other agency employees in an FBI investigation would seriously impair their effectiveness in assisting or participating in future FBI investigations. The privacy consideration also protects these individuals from unnecessary, unofficial questioning as to the FBI investigation. It is possible for a person targeted by law enforcement action to carry a grudge which may last for years, and to seek revenge on the personnel involved in the investigation at issue in these FBI records. The publicity associated with the release of their names and identifying information in connection with this investigation could trigger hostility towards them by such persons. Therefore, these employees maintain substantial privacy interests in not having their identities disclosed in this context. In contrast, there is no public interest to be served by the disclosure of these employees' names and identifying information because their identities, by themselves, would not demonstrate how the FBI

[32] In addition to categorical withholding under Exemption 7(A), media consisting of 51 minutes, 50 seconds of audio is being withheld in its entirety pursuant to FOIA Exemptions 6 and 7(C). The FBI utilized Exemptions 6 and 7(C) to withhold names and identifying information of non-FBI federal government personnel on the microcassette and cassette maintained by the homicide victim on the night of his murder.

performed its statutory mission and thus, would not significantly increase the public's understanding of the FBI's operations and activities. Accordingly, the FBI properly protected these employees' privacy interests pursuant to FOIA Exemptions 6 and 7(C).

*Names and Identifying Information of Local Law Enforcement Personnel*

61. Within another category of Exemptions 6 and 7(C), the FBI withheld the names and identifying information of local law enforcement employees. These employees were acting in their official capacities and aided the FBI in the law enforcement investigative activities reflected in the records responsive to the first portion of Plaintiff Free's request. The rationale for protecting the identities of FBI SAs and professional staff discussed in ¶ 52-54, *supra*, applies equally to the names and identifying information of these local law enforcement employees. Release of the identities of these law enforcement employees could subject them as individuals to unnecessary and unwelcome harassment that would invade their privacy and could cause them to be targeted for reprisal. In contrast, disclosure of this information would serve no public interest because it would not shed light on the operations and activities of the FBI. Accordingly, the FBI properly withheld this information pursuant to Exemptions 6 and 7(C).

*Names and Identifying Information of Third-Party Victims*

62. In this category of Exemptions 6 and 7(C), the FBI withheld the names and identifying information of third-party victims. Releasing these individuals' identities in the context of these investigative records would cause embarrassment, as well as unsolicited and unnecessary attention to be focused on these individuals. Such a release

could force them to relive emotionally trying events, causing further invasion of their privacy, in excess of the harms they've already been forced to endure. Thus, these victims maintain strong privacy interests in the protection of such personal information. Furthermore, there is no legitimate public interest to be served by releasing the identities of these victims because their identities, themselves, would not shed light on the operations and activities of the FBI. The FBI determined disclosure of this information would constitute a clearly unwarranted invasion of these individuals' personal privacy and consequently withheld this information pursuant to FOIA Exemptions 6 and 7(C).

*Names and Identifying Information of Foreign Law Enforcement Agency Personnel*

63. Pursuant to Exemptions 6 and 7(C), the FBI withheld the names and identifying information of foreign law enforcement agency personnel. These employees were acting in their official capacities and aided the FBI in the law enforcement investigative activities reflected in the records responsive to Plaintiff's requests. The rationale for protecting the identities of FBI SAs discussed in ¶¶ 52-54, *supra*, applies equally to the names and identifying information of these foreign law enforcement employees. Release of the identities of these law enforcement employees could subject them as individuals to unnecessary and unwelcome harassment that would invade their privacy and could cause them to be targeted for reprisal. In contrast, disclosure of this information would serve no public interest because it would not shed light on the operations and activities of the FBI. Accordingly, the FBI properly withheld this information pursuant to Exemptions 6 and 7(C).

*Names and Identifying Information of State and Local Government Personnel*

64. In the final category of Exemptions 6 and 7(C), the FBI withheld the names and identifying information of state and local government personnel who provided assistance to the FBI during its investigation into the murder of Miles. These individuals assisted the FBI in their official capacities and were able to do so due to their employment. Identifying them within the context of law enforcement records could subject them to unofficial inquiries for information related to their assistance, not anticipated by their contact with the FBI. Additionally, they could be targeted for retaliation by investigative subjects, those hostile to the FBI, or those who disparage cooperation with law enforcement as a result of their cooperation. Thus, these individuals maintain substantial privacy interests in not being disclosed in this context. In contrast, there is no public interest to be served by publicly disclosing their identities as doing so would not increase public understanding of FBI operations and activities. Accordingly, the FBI protected these individuals' names and identifying information pursuant to Exemptions 6 and 7(C).

**EXEMPTION 7(D) – CONFIDENTIAL SOURCE INFORMATION**

65. Exemption 7(D) exempts "records or information compiled for law enforcement purposes" when disclosure:

> could reasonably be expected to disclose the identity of a confidential source, including a State, local or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security

> intelligence investigation, information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D).

66. Numerous confidential sources report to the FBI on a regular basis; they provide information under express assurances of confidentiality and are "informants" within the common meaning of the term. Others are interviewed and provide information under implied assurances of confidentiality (i.e., under circumstances from which assurances of confidentiality may be inferred). In either situation, these sources are considered to be confidential because they furnish information only with the understanding that their identities and the information they provided will not be divulged outside the FBI. Information provided by these sources is singular in nature, and if released, could reveal their identities. The FBI has learned through experience that sources assisting, cooperating with, and providing information to the FBI must be free to do so without fear of reprisal. The FBI has also learned that sources must be free to furnish information to the FBI with complete candor and without the understandable tendency to hedge or withhold information because of fear that their cooperation with the FBI will later be made public. Sources providing information to the FBI should be secure in the knowledge that their assistance and their identities will be held in confidence.

67. The release of a source's identity would forever eliminate that source as a future means of obtaining information. In addition, when the identity of one source is revealed, that revelation has a chilling effect on the activities and cooperation of other sources. Such a result undermines one of the FBI's most important means of collecting

information and could thereby severely hamper law enforcement efforts to detect and apprehend individuals engaged in the violation of federal criminal laws.

*Names, Other Identifying Information of, and Information Provided by, Individuals under Implied Assurances of Confidentiality*

68. Pursuant to Exemption 7(D), the FBI protected the names, identifying information of, and information provided by third parties under circumstances in which confidentiality can be inferred. These third parties provided information concerning the activities of subjects who were of investigative interest to the FBI. The FBI considered 1) the singularity of the information provided and the likelihood these individuals could be identified through release of this information by those familiar with the events described; 2) the proximity of these sources to the investigative subjects and events they described; and 3) and the nature of the criminal acts they described. Based on these factors, the FBI inferred that these individuals provided this information to the FBI only because they believed their cooperation with the FBI, and the information they provided (outside of its investigative use), would remain confidential.

69. The FBI protected the identifying information of, and information provided by, individuals who conveyed critical information regarding potential criminal acts. These individuals were in a position to have ready access to and/or knowledge about investigative targets and others involved in the murder of Miles. Such access exposed them to potentially significant harm should their association and cooperation with the FBI be publicly disclosed. One reason they risked harm when cooperating is they were within the orbit of suspected violent criminals, and such criminals (in the FBI's experience)

typically seek to deter informants' cooperation with law enforcement through reprisal. Such reprisal can take many forms, to include defamation of the source's character among their peers/family; economic reprisal (deprivation of employment/business opportunities); violent threats aimed at instilling fear and doubt; or even violence itself (physical harm/murder). Considering these criminals already displayed/were believed by the sources to have a propensity towards violence, these sources likely feared violent reprisal. Furthermore, harm could result simply from the fact they cooperated with law enforcement. Some individuals/communities are suspicious of law enforcement and see cooperation with law enforcement among their peers as a betrayal of trust. Thus, these sources also risked being alienated by their friends and within their communities when they decided to provide information to the FBI. Even amidst these potential harms, these third-party sources provided specific, detailed information that is singular in nature – i.e., only a few individuals would be privy to such information. Thus, the FBI determined disclosure of the identities of these sources and the information they provided could subject these third parties, as well as their families, to retaliation or backlash, should their information be disclosed.

70. Considering the circumstances described above, it is reasonable to infer these third parties cooperated with the FBI only because they expected their identities and the information they provided would be held in confidence. Therefore, the FBI properly protected the sources' identities and the information they provided pursuant to Exemption 7(D).

*Name, Identifying Information of, and Information Provided by an Individual pursuant to Express Assurances of Confidentiality*

71. Within another category of Exemption 7(D), the FBI protected the name, identifying information of, and information provided by a third party to the FBI under express grants of confidentiality. When processing the records at issue, the FBI found evidence this individual, who provided specific and detailed information that is singular in nature, either requested his or her identity not be revealed; and/or FBI investigators would have, by standard practice, expressly promised this third party that his or her identity and the information he or she provided would remain confidential.

72. Providing express assurances of confidentiality is essential to the FBI's ability to obtain relevant and accurate information from Confidential Human Sources (CHS). Without these assurances by the FBI, those with access to information critical to FBI investigations may be reluctant to provide information or may modify their statements to lessen the severity of any backlashes; therefore, the FBI must provide credible assurances of confidentiality to these individuals in order to obtain factual, relevant, and timely information. Release of this source's identity and any singular information he or she provided may lead to the revelation of his or her identity and would also display unwillingness by the FBI to honor its assurances of confidentiality to current and future CHSs. Therefore, releasing this information would have a lasting negative impact on the FBI's informant program – it would greatly hinder the FBI's ability to recruit and maintain CHSs willing to provide accurate and relevant information pertaining to criminal activities.

73. The FBI was able to determine its investigators granted this individual within the records at issue an express assurance of confidentiality because it located positive indicators he or she was an official, established FBI informant. In most instances, the source was mentioned with the words "Protect Identity." This designation of "Protect Identity" is a positive indication that this individual entered an official, confidential relationship with the FBI in which he or she would have, by standard FBI practice, been provided with express assurance of confidentiality.

74. In sum, the FBI located evidence that an individual supplied information to the FBI with express assurance that his or her name, identifying information, and the information he or she provided would be held in confidence. Release of such information would endanger this CHS and cause great detriment to the FBI's ability to recruit and maintain reliable CHSs; thus, the FBI protected this information pursuant to Exemption 7(D).

*Foreign Government Agency Information Provided Under an Implied Assurance of Confidentiality and the Foreign Government's Identity*

75. The FBI asserted Exemption 7(D) to protect information provided to the FBI by a foreign government agency under implied assurances of confidentiality. Foreign government agencies frequently work with the FBI during criminal, counterterrorism and counterintelligence investigations. Under most circumstances, these agencies expect the FBI will not disclose information or parts of investigations in order to protect their capabilities and their relationship with the United States. It is reasonable for the FBI to

infer that foreign government agencies would not share information without an expectation of confidentiality, precisely in order to avoid the harms described below.

76. The FBI solicits and receives information regularly from state, local, and foreign agencies and authorities in connection with a wide variety of criminal and national security investigations. Inherent in this cooperative effort is the mutual understanding that the identities of the foreign government agencies' sources and the information provided by them will be held in confidence by the FBI and not released pursuant to FOIA and Privacy Act requests. As relevant here, the information withheld is directly related to how the foreign government agencies gleaned specific information, and the results of the inquiries within their own country.

77. Disclosure could reveal the information the foreign government agencies provided to the FBI in confidence as well as alienate the agencies' position within their country for sharing such information with the United States. Publicity, adverse or otherwise, concerning information provided to the FBI by foreign government agencies could be detrimental to the necessary cooperation of the foreign government agencies with the FBI. The degradation of perceived trust in the FBI by disclosing the information would seriously impair the FBI's effectiveness in assisting with or participating in future investigations with foreign government agencies. Accordingly, the FBI properly withheld this information under FOIA Exemption 7(D).

**EXEMPTION (B)(7)(E) INVESTIGATIVE TECHNIQUES AND PROCEDURES**

78. FOIA Exemption 7(E) provides protection for "law enforcement records [which]...would disclose techniques and procedures for law enforcement investigations

or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

79. The FBI asserted Exemption 7(E) to withhold information from these records, the release of which would disclose techniques and/or procedures for law enforcement investigations or prosecutions or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

80. Within the responsive documents, the FBI applied Exemption 7(E) to non-public investigative techniques and procedures utilized by the FBI to pursue its law enforcement mission, and also to non-public details about techniques and procedures that are otherwise known to the public. Specifically, the FBI asserted Exemption 7(E) to protect the collection and analysis of information, investigative techniques relevant to the FBI's confidential informant program, cooperation with foreign law enforcement agencies, and coordination with other government agencies (OGA) and state and local law enforcement partners.

*Collection and Analysis of Information*

81. In this category of Exemption 7(E), the FBI protected the methods the FBI uses to collect and analyze information it obtains for investigative purposes.[33] The release

[33] As referenced in ¶18 *supra* and in addition to categorical withholding under Exemption 7(A), the FBI informed Plaintiff Free that media consisting of 3 minutes, 16 seconds of audio is being withheld in its entirety pursuant to FOIA Exemption 7(E). The FBI utilized the Exemption 7(E) category of "Collection and Analysis" to withhold the microcassette

of this information would disclose the identity of methods used in the collection and analysis of information, including how and from where the FBI collects information and the methodologies employed to analyze it once collected. These methods are still in use today.

82. The FBI employs these non-public, sensitive investigative methods to collect and analyze detailed information which informs the FBI's decision-making in pursuit of its dual criminal and national security focus. Specifically, the FBI utilized these investigative methods to collect and analyze specific portions of non-public information, reports, and analytical resources to launch investigative activities geared towards capturing the perpetrator(s) associated with the homicide of Miles and by extent, prevent the dilapidation of the pending investigative process via additional disclosure. These investigative methods, the details of which have not been publicly disclosed, were used to detect and monitor potential subjects and aid law enforcement in assessing the overall investigative landscape.

83. Disclosure of these investigative methods in the collection and analysis of information would enable subjects of this and other FBI investigations to circumvent these or similar currently used techniques. Individuals who have knowledge of this withheld information would be able to use that knowledge to devise methods to circumvent the technique by altering their activities in a manner that would allow malevolent actors to exploit these valuable investigative tools and render the efficacy of

---

test tape created to further authenticity and enhancement examinations in furtherance of an investigative lead.

the FBI's collection method moot. Specifically, disclosure of such non-public information would enable potential, at-large investigative subjects to employ strategic actions aimed at reducing the value of an FBI investigative technique. Release of these non-public, sensitive investigative methods would embolden nefarious actors to develop sophisticated façades to conceal criminal activity and further deceptive practices.

84. Additionally, the relative utility of these non-public, sensitive techniques could be diminished if the actual techniques were released in this matter. This in turn would facilitate the accumulation of information by potential investigative subjects regarding the circumstances under which the specific techniques were used or requested and the usefulness of the information obtained. Release of this type of information would enable criminals to educate themselves about the techniques employed for the collection and analysis of information and therefore allow these individuals to take countermeasures to circumvent the effectiveness of these techniques and to continue to violate the law and engage in criminal activities. Accordingly, the FBI has properly withheld this information pursuant to FOIA Exemption 7(E).

*Investigative Techniques and Procedures Relevant to the FBI's Confidential Informant Program*

85. In this category of Exemption 7(E), the FBI protected the non-public investigative techniques and procedures of its informant program, and non-public, specific details concerning CHS techniques and procedures that are otherwise known to the public. CHS information is often critical to the successful pursuit of FBI investigations. Therefore, in order for the FBI to pursue its law enforcement and

intelligence gathering missions, it is essential for the FBI to protect these program details from being disseminated to the general public. Detailed below is a specific facet of the FBI's CHS program the FBI found to qualify for withholding information within the records at issue here pursuant to Exemption 7(E).

86. Source Recruitment and Maintenance Techniques: The records at issue identify and describe specific strategies and techniques for recruiting and maintaining effective CHSs. Revealing this information would reveal how FBI investigators identify potential sources for current investigations, how these sources are vetted for reliability, how the information provided by a source is vetted for accuracy, and how the FBI maintains effective confidential relationships with its CHSs. Providing this information would allow criminals to predict the FBI's CHS recruitment strategies and gain insight regarding which of their associates might be likely recruitment targets, and whom they should intimidate, coerce, or even eliminate to prevent detection by the FBI's CHS program. It would also allow criminals to pose as potentially valuable CHSs and feed the FBI faulty intelligence aimed at redirecting the FBI away from their own criminal activities.

87. Additionally, providing the FBI's strategies and techniques for maintaining effective CHSs would provide criminals with an idea of when and how the FBI contacts/interacts with its CHSs. It is foreseeable that this would allow criminals the chance to uncover or intercept the FBI's communication with its sources, expose CHSs' confidential relationships with the FBI and deprive the FBI of critical CHS derived intelligence. As releasing these sensitive strategies and techniques for

recruiting/maintaining effective CHSs could undermine the law enforcement purpose of the FBI's CHS program, enabling criminals to circumvent the law, this information is exempt from disclosure pursuant to FOIA Exemption 7(E).

*Cooperation with Foreign Law Enforcement Agencies*

88. The FBI withheld details of its coordination of investigative efforts with a foreign law enforcement agency pursuant to FOIA Exemption 7(E) because disclosure of this information would reveal non-public details about FBI techniques of coordination (or lack thereof) between a specific foreign law enforcement agency and the FBI in the homicide investigation of Miles. It would also disclose the types of information the FBI is able to obtain from the specific foreign law enforcement agency and the types of cases it chooses to coordinate with the foreign law enforcement agency. Investigative information disseminated as a result of the coordination with a foreign law enforcement agency can be utilized to set leads in furtherance of the FBI's investigative efforts. It is foreseeable that merely acknowledging the type or volume of information shared between the FBI and any specific foreign law enforcement agency partner would reveal the FBI's capabilities and vulnerabilities when it comes to coordination and information sharing with certain foreign law enforcement agencies in particular contexts; thus providing criminals/criminal organizations under investigation, details concerning the scope of collection and information gathering capabilities and strengths of the FBI, as well as identify vulnerabilities or weaknesses of the FBI and the foreign law enforcement agency to exploit in these investigative areas/efforts and circumvent the law.

*Coordination with Other Government Agencies and State and Local Law Enforcement Agencies*

89. Pursuant to Exemption 7(E), the FBI also withheld coordination with OGAs and state and local law enforcement agencies pertaining to information referenced in the records at issue. Revealing this information would reveal the FBI located information on the subject matter relevant to the investigative purview of OGAs and state and local law enforcement agencies. Release of this information in the context of these records would reveal which types of investigative data the FBI deems relevant enough to refer to or collaborate with certain OGAs and state and local law enforcement agencies for further investigation. This would allow criminals to structure their behavior to avoid investigative triggers that would initiate an investigative referral from the FBI to its partners, and investigative scrutiny by additional government agencies or state and local law enforcement agencies. Additionally, it is foreseeable that release of this information would reveal which agencies cover specific types of investigative matters. Repeated release of this type of information would enable criminals to predict and circumvent FBI investigative coordination with its government partners, state/local partners, and circumvent the law enforcement purpose of these partnerships and information sharing techniques. Accordingly, the FBI properly asserted Exemption 7(E) to withhold this type of information.

**FORESEEABLE HARM STANDARD**

90. The FOIA Improvement Act of 2016 generally adopted the foreseeable harm standard and made it statutory, advising that agencies shall withhold information

under the FOIA only if the agency reasonably foresees that disclosure would harm an interest protected by an exemption or disclosure is prohibited by law.

91. Accordingly, the FBI's analysis of responsive records subject to the FOIA is a two-part process. First, the FBI determines whether a record is exempt pursuant to one or more FOIA exemptions. Second, if the record is exempt pursuant to one or more FOIA exemptions, the FBI then considers whether foreseeable harm would result from disclosure of the record. For the records withheld pursuant to Exemption 7(A) and underlying exemptions here, the FBI conducted this two-part analysis and only withheld records where it determined the withheld record met both of these criteria. The FBI's foreseeable harm is more fully described within each of the above coded exemption justification categories.[34]

## OTHER GOVERNMENT AGENCY INFORMATION

92. The FBI identified documents which originated with or contained OGA information and/or equities. This information is denied in its entirety by the FBI pursuant to FOIA Exemption 7(A), as well as one or more of the underlying FOIA Exemptions referenced herein. Should the 7(A) fall away in the future, the FBI would need to consult with the OGAs to determine if exemptions *in addition to those asserted by the FBI* also apply to withhold the information.

[34] 5 U.S.C. § 552(a)(8)(A)(i)(II) does not impose a requirement to articulate harm for Exemption (b)(3).

## SEGREGABILITY

93. As discussed in ¶ 4 *supra*, the FBI identified a total of 1,862 responsive pages and 55 minutes, 6 seconds of responsive audio material. Following its segregability review, the FBI determined 1,834 pages and 55 minutes, 6 seconds of audio required withholding in their entirety pursuant to FOIA Exemption 7(A) and that portions of records required withholding pursuant to additional underlying Exemptions 3, 6, 7(C), 7(D), and 7(E). The FBI determined during its review that 28 pages of public source material within the records could be disclosed and these records were provided to Plaintiffs.

## PART IV: THE FBI'S GLOMAR RESPONSE TO PART TWO OF REQUEST (RECORDS CONCERNING THIRD PARTY WILLIAM LAVERTY)

### FOIA EXEMPTION 7 THRESHOLD

94. Before an agency can invoke any of the harms enumerated in Exemption 7, it must first demonstrate that the records or information at issue were compiled for law enforcement purposes. Pursuant to 28 U.S.C. §§ 533, 534, and Executive Order 12333 as implemented by the Attorney General's Guidelines for Domestic FBI Operations (AGG-DOM), and 28 C.F.R. § 0.85, the FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to the national security, and to further the foreign intelligence objectives of the United States.

95. Since it is the FBI's policy not to conduct a search for responsive records under *Glomar* circumstances, there is no specific statutory investigative authority for compiling the records to cite here.[35] However, because Plaintiffs seek records concerning William Laverty within the context of the FBI's investigation into the murder of Glenn R. Miles, the types of records requested, should any exist, would necessarily have been collected and maintained by the FBI as part of its law enforcement mission, and would readily meet the threshold requirement of Exemption 7.

**PRIVACY *GLOMAR***

96. The FBI relies on a *Glomar* response in instances where, if responsive records existed, even acknowledging their existence would result in harm protected against by one or more FOIA exemptions. To be credible and effective, the FBI must use a *Glomar* response in all similar cases regardless of whether responsive records exist, including instances in which the FBI does not possess records responsive to a particular request. If the FBI were to invoke a *Glomar* response only when it actually possessed responsive records, the *Glomar* response would be interpreted as an admission that responsive records exist.

97. To the extent Plaintiff Free seeks records concerning William Laverty within the murder investigation of Glenn R. Miles, the FBI determined that merely acknowledging the existence or non-existence of records responsive to this portion of

---

[35] Please refer to Footnote 4 *supra* for additional information concerning the FBI's *Glomar* response.

Plaintiff Free's request would trigger foreseeable harm under FOIA Exemptions 6 and 7(C) to the privacy interests of William Laverty.

**FBI POLICY FOR PROCESSING REQUESTS FOR THIRD PARTY RECORDS**

98. The FBI's longstanding policy has been to provide an Exemption 6 and 7(C)[36] *Glomar* response ("Privacy *Glomar*"), neither confirming nor denying the existence or non-existence of law enforcement records, in those instances where an individual seeks access to information regarding a third party, unless the requester establishes a significant public interest in disclosure that outweighs the third party's privacy interests. The FBI instituted this policy to protect the privacy rights of individuals, particularly those who appear in FBI law enforcement files. It is well-recognized that individuals have substantial privacy interests in relation to being associated with law enforcement investigations because any such association can engender comment, speculation, or harassment; can be embarrassing and stigmatizing; and can, in some circumstances, result in physical harm or threats of harm or death.

---

[36] 5 U.S.C. § 552(b)(6) exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." Similarly, 5 U.S.C. § 552(b)(7)(C) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." The practice of the FBI is to assert Exemption (b)(6) in conjunction with Exemption (b)(7)(C). Although the balancing test for Exemption (b)(6) uses a "would constitute a clearly unwarranted invasion of personal privacy" standard, and the test for Exemption (b)(7)(C) uses the lower standard of "could reasonably be expected to constitute an unwarranted invasion of personal privacy," the analysis and balancing required by both exemptions are sufficiently similar to warrant a consolidated discussion. The privacy interests are balanced against the public's interest in disclosure under the analysis of both exemptions.

Statements by an individual alluding to or acknowledging an association with a law enforcement investigation do not extinguish the privacy interests of the third party or constitute a waiver of the third party's privacy interests.[37]

99. If a requester establishes that disclosure would serve a public interest under the FOIA, then the FBI balances that public interest against the third party's privacy interests. This balancing is done on a case-by-case basis. The FBI will process a request for and release non-exempt law enforcement records about a third party only if it determines that a significant public interest outweighs that individual's privacy interests after conducting the balancing analysis.

100. For purposes of Exemptions 6 and 7(C), a public interest exists when disclosure of information about an individual would significantly increase the public's understanding of FBI operations and activities. The balancing of interests under Exemptions 6 and 7(C) also considers the privacy interests of individuals implicated in a FOIA request. The balancing analysis in each case is necessarily fact specific. Thus, each request must be treated individually, and the FBI must retain flexibility in the way in which it handles each request.

---

[37] In this case, Plaintiff Free is seeking information concerning a third party he alleges is a law enforcement officer. While the FBI can neither confirm nor deny the existence of Laverty's name or information within the investigative file concerning the murder of Glenn R. Miles, should such records exist, there are additional harms to confirming the existence of such records. Specifically, law enforcement officers have access to non-public investigative information resulting in a higher risk of harassment by others seeking access to non-public information. Furthermore, the likelihood that criminals would carry grudges and seek out revenge for the officer's involvement or role in an investigation provides a heightened need for neither confirming nor denying information of law enforcement officers within FBI investigative files.

101. Here, with respect to the portion of Plaintiff's request seeking records of William Laverty, Plaintiffs have not submitted: 1) a privacy waiver from William Laverty ; 2) proof of death of William Laverty as described in the regulation at 28 C.F.R. § 16.3(a); or 3) demonstrated a significant public interest in disclosure of the material sought concerning William Laverty.

102. The FBI issued a privacy *Glomar* to protect the privacy interests of William Laverty, who was named in Plaintiff Free's FOIA request. The FBI is not asserting the *Glomar* as to the existence of records concerning the murder of Glenn R. Miles. With respect to the portion of Plaintiff Free's request concerning third party William Laverty, Plaintiffs are seeking records that, should they exist, would officially confirm this individual's identity within the FBI's murder investigation into the death of Glenn R. Miles. Official confirmation could reasonably be expected to draw negative and unwanted attention to William Laverty; could subject William Laverty to harassing inquiries and otherwise stigmatize and adversely affect him. Plaintiffs failed to provide any information to articulate a specific public interest in disclosure under the FOIA applicable to release of William Laverty's name and or information within the investigation, should such records exist. As such, the substantial privacy interests of William Laverty outweigh any public interest in disclosure.

103. In sum, Plaintiffs provided no third-party waiver or proof of death for William Laverty. Plaintiffs have not articulated a significant public interest in disclosure that would outweigh the substantial privacy interest of William Laverty. Therefore, in response to the portion of Plaintiff Free's request for information concerning William

Laverty, the FBI asserted the privacy *Glomar* pursuant to FOIA Exemptions 6 and 7(C). Finally, when the FBI asserts a privacy *Glomar*, it is policy not to conduct a search for responsive records because the nature of the requested records alone prohibits acknowledgement and disclosure.

## FORESEEABLE HARM

104. The FOIA Improvement Act of 2016 generally adopted the foreseeable harm standard and made it statutory, advising that agencies shall withhold information under the FOIA only if the agency reasonably foresees that disclosure would harm an interest protected by an exemption or disclosure is prohibited by law. Here, the foreseeable harm under Exemptions 6 and 7(C) is to the personal privacy of an individual and tied to the disclosure of the existence or non-existence of records. In response to the request at issue here, the FBI determined that foreseeable harm to the privacy interests of the third party would result if the FBI were to disclose the existence or non-existence of records.

## CONCLUSION

105. The FBI performed adequate and reasonable searches for responsive records, processed all such records, and released all reasonably segregable non-exempt information from documents responsive to Plaintiff Free's FOIA request. The records responsive to Plaintiff Free's request pertaining to the homicide investigation of Miles were properly categorically withheld pursuant to FOIA Exemption 7(A). Specifically, the FBI determined the information memorialized in these records would cause harm to pending law enforcement proceedings, and release of any of this information would

endanger pending enforcement proceedings and any prospective prosecution that may result from those proceedings. Additionally, portions of the records were also withheld pursuant to one or more of the underlying FOIA Exemptions 3, 6, 7(C), 7(D), and 7(E), and exemptions for other government agency information and equities, as disclosure of this information would reveal statutorily protected information; would cause a clearly unwarranted invasion of the personal privacy, or could reasonably be expected to constitute an unwarranted invasion of personal privacy; could reasonably be expected to disclose the identities of confidential sources and the information they provided; would disclose techniques and procedures for law enforcement investigations; or under the purview of another government agency. After reviewing the documents at issue, the FBI determined that there is no further non-exempt information that can be reasonably segregated and released without revealing exempt information. For the portion of Plaintiff Free's request concerning William Laverty, the FBI properly determined it could neither confirm nor deny whether it possesses records responsive to Plaintiff Free's request, pursuant to FOIA Exemptions 6 and 7(C), because merely confirming or denying the existence of such records could reasonably be expected to invade the personal privacy interest of the third party listed in the request.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibits A through L attached hereto are true and correct copies.

CHRISTINA DRIVER Digitally signed by CHRISTINA DRIVER Date: 2026.08.19 16:30:58 -04'00'

Christina L. Driver
Acting Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Natalia Mendoza, *et al.*,<br>Plaintiffs,<br>v.<br>Federal Bureau of Investigation,<br>Defendant. | Civil Action No. 25-cv-539 (JEM) |

**EXHIBIT A**

----START MESSAGE---- Subject: eFOIA Request Received Sent: 2025-05-22T03:21:17.109061+00:00 Status: sent Message:

## Individual Information

| | |
|---|---|
| **Prefix** | |
| **First Name** | Andrew |
| **Middle Name** | |
| **Last Name** | Free |
| **Suffix** | |
| **Email** | 186861-43559695@requests.muckrock.com |
| **Phone** | |
| **Location** | United States |

## Domestic Address

| | |
|---|---|
| **Address Line 1** | MuckRock News, DEPT MR186861 |
| **Address Line 2** | 263 Huntington Ave |
| **City** | Boston |
| **State** | Massachusetts |
| **Postal** | 02115 |

## Agreement to Pay

**How you will pay**

I am limiting my request to the free two hours of searching and 100 duplicated pages. I am not willing to pay additional fees.

## Non-Individual FOIA Request

**Request Information**

To Whom It May Concern:

Pursuant to the Freedom of Information Act, I hereby request the following records:

I request any FBI records pertaining to Glenn R. Miles, who was killed in the line of duty as a Customs Agent for the U.S. Treasury Department in Arizona on February 21, 1986. This request includes, but is not limited to any FBI lab analysis of Agent Miles' handheld audio recorder, or references to its contents, as well as any 302s or field reports regarding Agent Miles' potential interactions with the alleged drug traffickers who were reportedly involved in his murder. Finally, this request includes any records sent or received by FBI to William Laverty, U.S. Customs Attache at the U.S. Embassy in Mexico City regarding the July 1986 arrest of five Mexican nationals in Hermosillo, Sonora, Mexico who were alleged to have been involved with the slaying.

The requested documents will be made available to the general public, and this request is not being made for commercial purposes.

In the event that there are fees, I would be grateful if you would inform me of the total charges in advance of fulfilling my request. I would prefer the request filled electronically, by e-mail attachment if available or CD-ROM if not.

Thank you in advance for your anticipated cooperation in this matter. I look forward to receiving your response to this request within 20 business days, as the statute requires.

Sincerely,

Andrew Free

Upload documents directly:
https://accounts.muckrock.com/accounts/login/?next=https%3A%2F%2Fwww.muckrock.com%2Faccounts%2Flogin%2F%3Fnext%3D%252Faccounts%252Fagency_login%252Ffederal-bureau-of-investigation-10%252Fglenn-r-miles-fbi-files-186861%252F%253Femail%253Defoia%252540subscriptions.fbi.gov&url_auth_token=AAAj2PTIE3Nq8uoWJhQmyIrfU4w%3A1uHwTk%3AZzfZfnkAMujvqH2AC41IrluoKXSth9lXYzq6YrJI_JI

**

Please be advised that efoia@subscriptions.fbi.gov is a no-reply email address. Questions regarding your FOIA request may be directed to foipaquestions@fbi.gov. If you have received a FOIPA request number, please include this in all correspondence concerning your request. Please note eFOIPA requests are processed in the order that they are received. If you have not received a FOIPA request number, your request is in the process of

being opened at which time it will be assigned a FOIPA request number and correspondence will be forthcoming.

**

Upon receipt of your FOIPA request number, you may check the status of your FOIPA request on the FBI's electronic FOIA Library (The Vault) on the FBI's public website, http://vault.fbi.gov by clicking on the 'Check Status of Your FOI/PA Request tool' link. Status updates are performed on a weekly basis. If you receive a comment that your FOIPA request number was not located in the database, please check back at a later date.

----END MESSAGE----

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Natalia Mendoza, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Federal Bureau of Investigation,<br><br>Defendant. | Civil Action No. 25-cv-539 (JEM) |

**EXHIBIT B**

**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

May 27, 2025

ANDREW FREE
DEPT MR 186861
263 HUNTINGTON AVENUE
BOSTON, MA 02115

FOIPA Request No.: 1668952-000
Subject: MILES, GLENN R.

Dear Andrew Free:

This acknowledges receipt of your Freedom of Information/Privacy Acts (FOIPA) request to the FBI regarding the investigation of Glenn R. Miles. Below you will find check boxes and relevant paragraphs about your request, as well as specific determinations required by these statutes. Please read each one carefully.

- [x] Your request has been received at FBI Headquarters for processing.

- [x] You submitted your request via the FBI's eFOIPA system.

  - [x] Future correspondence about your FOIPA request will be provided in an email link unless the record file type is not supported by the eFOIPA system.

  - [ ] Correspondence for requests containing audio, video, or high-resolution photographs cannot be sent through the eFOIPA system. Future correspondence about your FOIPA request will be delivered through standard mail.

- [ ] The subject of your request is currently being processed and documents subject to the FOIPA will be released to you upon completion.

- [ ] Release of responsive records subject to the FOIPA will be posted to the FBI's electronic FOIA Library (The Vault), http:/vault.fbi.gov, and you will be contacted when the release is posted.

- [ ] Your request for a public interest fee waiver is being considered and you will be advised of the decision if fees are applicable. If your fee waiver is not granted, you will be responsible for applicable fees per your designated fee category below.

- [x] For the purpose of assessing fees, we have determined:

  - [ ] As a commercial use requester, you will be charged applicable search, review, and duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(I).

  - [ ] As an educational institution, noncommercial scientific institution or representative of the news media requester, you will be charged applicable duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(II).

  - [x] As a general (all others) requester, you will be charged applicable search and duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(III).

You also requested information regarding one or more third parties. Please be advised the FBI will neither confirm nor deny the existence of such records pursuant to FOIA exemptions (b)(6) and (b)(7)(C), 5 U.S.C. §§ 552 (b)(6) and (b)(7)(C). The mere acknowledgement of the existence of FBI records on third-party individuals could reasonably be expected to constitute an unwarranted invasion of personal privacy. This is our standard response to such requests and should not be taken to mean that records do, or do not, exist. Please visit www.fbi.gov/foia for more information about making requests for records on third party individuals (living or deceased).

Please check the status of your FOIPA request at www.vault.fbi.gov by clicking on "Check Status of your FOI/PA Request." Status updates are adjusted weekly. The status of newly assigned requests may not be available until the next weekly update. If the FOIPA has been closed, the notice will indicate that appropriate correspondence has been mailed to the address on file.

Additional information about the FOIPA can be found at www.fbi.gov/foia. Should you have questions regarding your request, please feel free to contact foipaquestions@fbi.gov. Please reference the FOIPA Request number listed above in all correspondence concerning your request.

If you are not satisfied with the FBI's determination in response to this request, you may proceed under any or all of the following options:

- You may seek dispute resolution services through the FBI directly by emailing our FOIA Public Liaison at foipaquestions@fbi.gov. The subject heading should clearly state "Dispute Resolution Services." Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

- You may contact the Office of Government Information Services (OGIS), who serves as the federal FOIA Ombudsman. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

- You may file an administrative appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal. **Pursuant to 28 C.F.R. § 16.8(a), your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of this response to your request.** If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." Please reference the FOIPA Request Number listed above in your correspondence so it may be easily identified. If possible, please provide a copy of your original request and this response letter with your appeal.

Note: Utilizing the FBI's dispute resolution services or requesting mediation through OGIS does not toll the ninety (90) day limit to file a timely appeal with OIP.

Sincerely,

Record/Information Dissemination Section
Information Management Division

Enclosures

## EXPLANATION OF EXEMPTIONS

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552**

(b)(1) (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2) related solely to the internal personnel rules and practices of an agency;

(b)(3) specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4) trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b)(7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8) contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9) geological and geophysical information and data, including maps, concerning wells.

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a**

(d)(5) information compiled in reasonable anticipation of a civil action proceeding;

(j)(2) material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals;

(k)(1) information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2) investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3) material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4) required by statute to be maintained and used solely as statistical records;

(k)(5) investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6) testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k)(7) material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

**U.S Department of Justice**

# Certification of Identity

FORM APPROVED OMB NO. 1103-0016
EXPIRES 03/31/17

**Privacy Act Statement.** In accordance with 28 CFR Section 16.41(d) personal data sufficient to identify the individuals submitting requests by mail under the Privacy Act of 1974, 5 U.S.C. Section 552a, is required. The purpose of this solicitation is to ensure that the records of individuals who are the subject of U.S. Department of Justice systems of records are not wrongfully disclosed by the Department. Requests will not be processed if this information is not furnished. False information on this form may subject the requester to criminal penalties under 18 U.S.C. Section 1001 and/or 5 U.S.C. Section 552a(i)(3).

Public reporting burden for this collection of information is estimated to average 0.50 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Suggestions for reducing this burden may be submitted to the Office of Information and Regulatory Affairs, Office of Management and Budget, Public Use Reports Project (1103-0016), Washington, DC 20503.

Full Name of Requester [1] ______________________________

Citizenship Status [2] ______________ Social Security Number [3] ______________

Current Address ______________________________

Date of Birth ______________ Place of Birth ______________

## OPTIONAL: Authorization to Release Information to Another Person

This form is also to be completed by a requester who is authorizing information relating to himself or herself to be released to another person.

Further, pursuant to 5 U.S.C. Section 552a(b), I authorize the U.S. Department of Justice to release any and all information relating to me to:

______________________________

**Print or Type Name**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. 552a(i)(3) by a fine of not more than $5,000.

**Signature [4] ______________________ Date ______________**

[1] Name of individual who is the subject of the record(s) sought.

[2] Individual submitting a request under the Privacy Act of 1974 must be either "a citizen of the United States or an alien lawfully admitted for permanent residence," pursuant to 5 U.S.C. Section 552a(a)(2). Requests will be processed as Freedom of Information Act requests pursuant to 5 U.S.C. Section 552, rather than Privacy Act requests, for individuals who are not United States citizens or aliens lawfully admitted for permanent residence.

[3] Providing your social security number is voluntary. You are asked to provide your social security number only to facilitate the identification of records relating to you. Without your social security number, the Department may be unable to locate any or all records pertaining to you.

[4] Signature of individual who is the subject of the record sought.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Natalia Mendoza, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Federal Bureau of Investigation,<br><br>Defendant. | Civil Action No. 25-cv-539 (JEM) |

**EXHIBIT C**

**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

June 3, 2025

ANDREW FREE
DEPT MR 186861
263 HUNTINGTON AVENUE
BOSTON, MA 02115

FOIPA Request No.: 1668952-000
Subject: MILES, GLENN R.

Dear Andrew Free:

The FBI has completed its search for records subject to the Freedom of Information Act (FOIA) that are responsive to your request. The enclosed 66 pages of records were determined to be responsive to your subject and were previously processed and released. Please see the selected paragraphs below for relevant information specific to your request as well as the enclosed FBI FOIPA Addendum for standard responses applicable to all requests.

☐ In an effort to provide you with responsive records as expeditiously as possible, we are releasing documents from previous requests regarding your subject. We consider your request fulfilled. Since we relied on previous results, additional records potentially responsive to your subject may exist. If this release of previously processed material does not satisfy your request, you may request an additional search for records. Submit your request by mail to **Initial Processing Operations Unit; Record/Information Dissemination Section; Information Management Division; Federal Bureau of Investigation; 200 Constitution Drive; Winchester, VA 22602. You may also email your response to** foipaquestions@fbi.gov**.** Please include the FOIPA Request Number listed above in your correspondence.

☑ Please be advised that additional records responsive to your subject exist. If this release of previously processed material does not satisfy your request, you must advise us that you want the additional records processed. Please submit your response within thirty (30) days to **Initial Processing Operations Unit; Record/Information Dissemination Section; Information Management Division; Federal Bureau of Investigation; 200 Constitution Drive; Winchester, VA 22602. You may also email your response to** foipaquestions@fbi.gov**.** Please include the FOIPA Request Number listed above in your correspondence. **If we do not receive your decision within thirty (30) days of the date of this notification, your request will be closed.**

☐ One or more of the enclosed records were transferred to the National Archives and Records Administration (NARA). Although we retained a version of the records previously processed pursuant to the FOIA, the original records are no longer in our possession.

If this release of the previously processed material does not satisfy your request, you may file a FOIPA request with NARA at the following address:

National Archives and Records Administration
Special Access and FOIA
8601 Adelphi Road, Room 5500
College Park, MD 20740-6001

☐ Records potentially responsive to your request were transferred to the National Archives and Records Administration (NARA), and they were not previously processed pursuant to the FOIA. You may file a request with NARA using the address above

☐ One or more of the enclosed records were destroyed. Although we retained a version of the records previously processed pursuant to the FOIA, the original records are no longer in our possession. Record retention and disposal is carried out under supervision of the National Archives and Records Administration (NARA), Title 44, United States Code, Section 3301 as implemented by Title 36, Code of Federal Regulations, Part 1228; Title 44, United States Code, Section 3310 as implemented by Title 36, Code of Federal Regulations, Part 1229.10.

☐ Records potentially responsive to your request were destroyed. Since this material could not be reviewed, it is not known if it was responsive to your request. Record retention and disposal is carried out under supervision of the National Archives and Records Administration (NARA) according to Title 44 United States Code Section 3301, Title 36 Code of Federal Regulations (CFR) Chapter 12 Sub-chapter B Part 1228, and 36 CFR 1229.10.

☐ Documents or information referred to other Government agencies were not included in this release.

Please refer to the enclosed FBI FOIPA Addendum for additional standard responses applicable to your request. **"Part 1"** of the Addendum includes standard responses that apply to all requests. **"Part 2"** includes additional standard responses that apply to all requests for records about yourself or any third-party individuals. **"Part 3"** includes general information about FBI records that you may find useful. Also enclosed is our Explanation of Exemptions.

Additional information about the FOIPA can be found at www.fbi.gov/foia. Should you have questions regarding your request, please feel free to contact foipaquestions@fbi.gov. Please reference the FOIPA Request number listed above in all correspondence concerning your request.

Please be advised that if you are seeking a new search for records, you may wish to narrow the scope of your request based on material that you have already received, e.g., timeframe or locality. Additionally, be advised that "unusual circumstances" may apply. See 5 U.S.C. § 552 (a)(6)(B)(iii). These "unusual circumstances" will delay our ability to make a determination on your request within 20 days. See 5 U.S.C. § 552 (a)(6)(B). Additionally, the payment of pertinent fees may apply to your request. See 5 U.S.C. § 552 (a)(4)(A)(viii). The application of "unusual circumstances" is not a determination of how the FBI will respond to your substantive request.

If you are not satisfied with the FBI's determination in response to this request, you may proceed under any or all of the following options:

- You may seek dispute resolution services through the FBI directly by emailing our FOIA Public Liaison at foipaquestions@fbi.gov. The subject heading should clearly state "Dispute Resolution Services." Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

- You may contact the Office of Government Information Services (OGIS), who serves as the federal FOIA Ombudsman. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

- You may file an administrative appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal. **Pursuant to 28 C.F.R. § 16.8(a), your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of this response to your request.** If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." Please reference the FOIPA Request Number listed above in your correspondence so it may be easily identified. If possible, please provide a copy of your original request and this response letter with your appeal.

Note: Utilizing the FBI's dispute resolution services or requesting mediation through OGIS does not toll the ninety (90) day limit to file a timely appeal with OIP.

Sincerely,

Record/Information Dissemination Section
Information Management Division

Enclosures

**FBI FOIPA Addendum**

**As referenced in our letter responding to your Freedom of Information/Privacy Acts (FOIPA) request, the FBI FOIPA Addendum provides information applicable to your request. Part 1 of the Addendum includes standard responses that apply to all requests. Part 2 includes standard responses that apply to requests for records about individuals to the extent your request seeks the listed information. Part 3 includes general information about FBI records, searches, and programs.**

**Part 1: The standard responses below apply to all requests:**

(i) **5 U.S.C. § 552(c).** Congress excluded three categories of law enforcement and national security records from the requirements of the FOIPA [5 U.S.C. § 552(c)]. FBI responses are limited to those records subject to the requirements of the FOIPA. Additional information about the FBI and the FOIPA can be found on the www.fbi.gov/foia website.

(ii) **Intelligence Records**. To the extent your request seeks records of intelligence sources, methods, or activities, the FBI can neither confirm nor deny the existence of records pursuant to FOIA exemptions (b)(1), (b)(3), and as applicable to requests for records about individuals, PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(1), (b)(3), and (j)(2)]. The mere acknowledgment of the existence or nonexistence of such records is itself a classified fact protected by FOIA exemption (b)(1) and/or would reveal intelligence sources, methods, or activities protected by exemption (b)(3) [50 USC § 3024(i)(1)]. This is a standard response and should not be read to indicate that any such records do or do not exist.

**Part 2: The standard responses below apply to all requests for records on individuals:**

(i) **Requests for Records about any Individual—Watch Lists.** The FBI can neither confirm nor deny the existence of any individual's name on a watch list pursuant to FOIA exemption (b)(7)(E) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (j)(2)]. This is a standard response and should not be read to indicate that watch list records do or do not exist.

(ii) **Requests for Records about any Individual—Witness Security Program Records.** The FBI can neither confirm nor deny the existence of records which could identify any participant in the Witness Security Program pursuant to FOIA exemption (b)(3) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(3), 18 U.S.C. 3521, and (j)(2)]. This is a standard response and should not be read to indicate that such records do or do not exist.

(iii) **Requests for Confidential Informant Records.** The FBI can neither confirm nor deny the existence of confidential informant records pursuant to FOIA exemptions (b)(7)(D), (b)(7)(E), and (b)(7)(F) [5 U.S.C.§ § 552 (b)(7)(D), (b)(7)(E), and (b)(7)(F)] and Privacy Act exemption (j)(2) [5 U.S.C.§ 552a (j)(2)]. The mere acknowledgment of the existence or nonexistence of such records would reveal confidential informant identities and information, expose law enforcement techniques, and endanger the life or physical safety of individuals. This is a standard response and should not be read to indicate that such records do or do not exist.

**Part 3: General Information:**

(i) **Record Searches and Standard Search Policy.** The Record/Information Dissemination Section (RIDS) searches for reasonably described records by searching systems, such as the Central Records System (CRS), or locations where responsive records would reasonably be found. The CRS is an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled by the FBI per its law enforcement, intelligence, and administrative functions. The CRS spans the entire FBI organization, comprising records of FBI Headquarters, FBI Field Offices, and FBI Legal Attaché Offices (Legats) worldwide; Electronic Surveillance (ELSUR) records are included in the CRS. The standard search policy is a search for main entity records in the CRS. Unless specifically requested, a standard search does not include a search for reference entity records or administrative records of previous FOIPA requests.

a. *Main Entity Records* – created for individuals or non-individuals who are the subjects or the focus of an investigation
b. *Reference Entity Records*- created for individuals or non-individuals who are associated with a case but are not known subjects or the focus of an investigation

(ii) **FBI Records.** Founded in 1908, the FBI carries out a dual law enforcement and national security mission. As part of this dual mission, the FBI creates and maintains records on various subjects; however, the FBI does not maintain records on every person, subject, or entity.

(iii) **Foreseeable Harm Standard.** As amended in 2016, the Freedom of Information Act provides that a federal agency may withhold responsive records only if: (1) the agency reasonably foresees that disclosure would harm an interest protected by one of the nine exemptions that FOIA enumerates, or (2) disclosure is prohibited by law (5 United States Code, Section 552(a)(8)(A)(i)). The FBI considers this foreseeable harm standard in the processing of its requests.

(iv) **Requests for Criminal History Records or Rap Sheets.** The Criminal Justice Information Services (CJIS) Division provides Identity History Summary Checks – often referred to as a criminal history record or rap sheet. These criminal history records are not the same as material in an investigative "FBI file." An Identity History Summary Check is a listing of information taken from fingerprint cards and documents submitted to the FBI in connection with arrests, federal employment, naturalization, or military service. For a fee, individuals can request a copy of their Identity History Summary Check. Forms and directions can be accessed at www.fbi.gov/about-us/cjis/identity-history-summary-checks. Additionally, requests can be submitted electronically at www.edo.cjis.gov. For additional information, please contact CJIS directly at (304) 625-5590.

## EXPLANATION OF EXEMPTIONS

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552**

(b)(1) (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2) related solely to the internal personnel rules and practices of an agency;

(b)(3) specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4) trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b)(7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8) contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9) geological and geophysical information and data, including maps, concerning wells.

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a**

(d)(5) information compiled in reasonable anticipation of a civil action proceeding;

(j)(2) material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals;

(k)(1) information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2) investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3) material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4) required by statute to be maintained and used solely as statistical records;

(k)(5) investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6) testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k)(7) material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Natalia Mendoza, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Federal Bureau of Investigation,<br><br>Defendant. | Civil Action No. 25-cv-539 (JEM) |

**EXHIBIT D**

MP FOIA 2.4.1

## Appeal

| | |
|---|---|
| Appeal Information | |
| Appeal Number | A-2025-02265 |
| Received Date | 07/25/2025 |
| Due Date | 08/22/2025 |
| Receipt Method | Electronic |
| Postmark Date | |
| Appeal Is In Litigation | No |
| Unusual Circumstances | |
| Track | |
| Significant | |
| Coordination | |
| Agency | OIP |
| Document Delivery Method | Email |
| Topic | |
| Litigation Information | |
| Litigation Number | |
| First Name of Litigator | |
| Last Name of Litigator | |
| Case Name | |
| Federal District Court | |
| Date of Final Adjudication by Court | |
| Request Information | |
| Request Number | 1668952-000 |
| Request ID | |
| Component | FBI |
| Component Email | fbi.foipa.appeal@fbi.gov |
| Subject of Request | To Whom It May Concern:<br><br>Pursuant to the Freedom of Information Act, I hereby request the following records:<br><br>I request any FBI records pertaining to Glenn R. Miles, who was killed in the line of duty as a Customs Agent for the U.S. Treasury Department in Arizona on February 21, 1986. This request includes, but is not limited to any FBI lab analysis of Agent Miles' handheld audio recorder, or references to its contents, as well as any 302s or field reports |

regarding Agent Miles' potential interactions with the alleged drug traffickers who were reportedly involved in his murder. Finally, this request includes any records sent or received by FBI to William Laverty, U.S. Customs Attache at the U.S. Embassy in Mexico City regarding the July 1986 arrest of five Mexican nationals in Hermosillo, Sonora, Mexico who were alleged to have been involved with the slaying.

The requested documents will be made available to the general public, and this request is not being made for commercial purposes.

In the event that there are fees, I would be grateful if you would inform me of the total charges in advance of fulfilling my request. I would prefer the request filled electronically, by e-mail attachment if available or CD-ROM if not.

Thank you in advance for your anticipated cooperation in this matter. I look forward to receiving your response to this request within 20 business days, as the statute requires.

Sincerely,

Andrew Free

| | |
|---|---|
| Basis for Appeal | |
| Description of Appeal | We appeal the redactions in this release, and also the determination not to provide us additional records without action from us. If you have closed this request, please reopen it and provide the 1 media file.<br><br>Thank you. |
| Based on Denial of Fee Waiver | No |
| Based on Denial of Expedited Processing | No |
| Requester Item Type 1 | Supplemental Information |
| Requester Items 1 | E1273e580af4e4f6d22f8febd3e54c807fd461ee149ee372a19_Q254151_R463636_D165471228.pdf |
| Requester Item Type 2 | Supplemental Information |
| Requester Items 2 | E1273e580af4e4f6d22f8febd3e54c807fd461ee149ee372a19_Q254151_R463636_D165471244.pdf |
| Requester Item Type 3 | Supplemental Information |
| Requester Items 3 | E1273e580af4e4f6d22f8febd3e54c807fd461ee149ee372a19_Q254151_R463636_D165471224.pdf |
| Requester Contact Information | |
| Salutation | |
| First Name | Andrew |
| Middle Name | |
| Last Name | Free |
| Email Address | 186861-43559695@requests.muckrock.com |
| Organization | |
| Register Number | |
| Phone Number | 617-299-1832 |
| Fax Number | |
| Other Information | |
| Address Type | Mailing |

| | |
|---|---|
| Country | |
| Address Line 1 | MuckRock News DEPT MR#186861 |
| Address Line 2 | 263 Huntington Ave |
| Military Branch | |
| City | Boston |
| Province | |
| State | Massachusetts |
| Zip/Postal Code | 02115 |

Expedited Processing Information

| | |
|---|---|
| Expedited Processing Requested? | No |
| Expedited Processing Request Date | |
| Expedited Processing Determination | |
| Standards for Expedition | |
| Expedited Justification | |
| Workflow State | Submitted |

Records Management

| | |
|---|---|
| Workflow Status | Submitted |
| Assigned Attorney | |
| Disposition Date | |
| Marked for Disposition | |
| Disposition Confirmed | |
| Disposition Confirmed By | |

**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

June 3, 2025

ANDREW FREE
DEPT MR 186861
263 HUNTINGTON AVENUE
BOSTON, MA 02115

FOIPA Request No.: 1668952-000
Subject: MILES, GLENN R.

Dear Andrew Free:

The FBI has completed its search for records subject to the Freedom of Information Act (FOIA) that are responsive to your request. The enclosed 66 pages of records were determined to be responsive to your subject and were previously processed and released. Please see the selected paragraphs below for relevant information specific to your request as well as the enclosed FBI FOIPA Addendum for standard responses applicable to all requests.

☐ In an effort to provide you with responsive records as expeditiously as possible, we are releasing documents from previous requests regarding your subject. We consider your request fulfilled. Since we relied on previous results, additional records potentially responsive to your subject may exist. If this release of previously processed material does not satisfy your request, you may request an additional search for records. Submit your request by mail to **Initial Processing Operations Unit; Record/Information Dissemination Section; Information Management Division; Federal Bureau of Investigation; 200 Constitution Drive; Winchester, VA 22602. You may also email your response to** foipaquestions@fbi.gov**.** Please include the FOIPA Request Number listed above in your correspondence.

☑ Please be advised that additional records responsive to your subject exist. If this release of previously processed material does not satisfy your request, you must advise us that you want the additional records processed. Please submit your response within thirty (30) days to **Initial Processing Operations Unit; Record/Information Dissemination Section; Information Management Division; Federal Bureau of Investigation; 200 Constitution Drive; Winchester, VA 22602. You may also email your response to** foipaquestions@fbi.gov**.** Please include the FOIPA Request Number listed above in your correspondence. **If we do not receive your decision within thirty (30) days of the date of this notification, your request will be closed.**

☐ One or more of the enclosed records were transferred to the National Archives and Records Administration (NARA). Although we retained a version of the records previously processed pursuant to the FOIA, the original records are no longer in our possession.

If this release of the previously processed material does not satisfy your request, you may file a FOIPA request with NARA at the following address:

National Archives and Records Administration
Special Access and FOIA
8601 Adelphi Road, Room 5500
College Park, MD 20740-6001

☐ Records potentially responsive to your request were transferred to the National Archives and Records Administration (NARA), and they were not previously processed pursuant to the FOIA. You may file a request with NARA using the address above

☐ One or more of the enclosed records were destroyed. Although we retained a version of the records previously processed pursuant to the FOIA, the original records are no longer in our possession. Record retention and disposal is carried out under supervision of the National Archives and Records Administration (NARA), Title 44, United States Code, Section 3301 as implemented by Title 36, Code of Federal Regulations, Part 1228; Title 44, United States Code, Section 3310 as implemented by Title 36, Code of Federal Regulations, Part 1229.10.

☐ Records potentially responsive to your request were destroyed. Since this material could not be reviewed, it is not known if it was responsive to your request. Record retention and disposal is carried out under supervision of the National Archives and Records Administration (NARA) according to Title 44 United States Code Section 3301, Title 36 Code of Federal Regulations (CFR) Chapter 12 Sub-chapter B Part 1228, and 36 CFR 1229.10.

☐ Documents or information referred to other Government agencies were not included in this release.

Please refer to the enclosed FBI FOIPA Addendum for additional standard responses applicable to your request. **"Part 1"** of the Addendum includes standard responses that apply to all requests. **"Part 2"** includes additional standard responses that apply to all requests for records about yourself or any third-party individuals. **"Part 3"** includes general information about FBI records that you may find useful. Also enclosed is our Explanation of Exemptions.

Additional information about the FOIPA can be found at www.fbi.gov/foia. Should you have questions regarding your request, please feel free to contact foipaquestions@fbi.gov. Please reference the FOIPA Request number listed above in all correspondence concerning your request.

Please be advised that if you are seeking a new search for records, you may wish to narrow the scope of your request based on material that you have already received, e.g., timeframe or locality. Additionally, be advised that "unusual circumstances" may apply. See 5 U.S.C. § 552 (a)(6)(B)(iii). These "unusual circumstances" will delay our ability to make a determination on your request within 20 days. See 5 U.S.C. § 552 (a)(6)(B). Additionally, the payment of pertinent fees may apply to your request. See 5 U.S.C. § 552 (a)(4)(A)(viii). The application of "unusual circumstances" is not a determination of how the FBI will respond to your substantive request.

If you are not satisfied with the FBI's determination in response to this request, you may proceed under any or all of the following options:

- You may seek dispute resolution services through the FBI directly by emailing our FOIA Public Liaison at foipaquestions@fbi.gov. The subject heading should clearly state "Dispute Resolution Services." Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

- You may contact the Office of Government Information Services (OGIS), who serves as the federal FOIA Ombudsman. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

- You may file an administrative appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal. **Pursuant to 28 C.F.R. § 16.8(a), your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of this response to your request.** If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." Please reference the FOIPA Request Number listed above in your correspondence so it may be easily identified. If possible, please provide a copy of your original request and this response letter with your appeal.

Note: Utilizing the FBI's dispute resolution services or requesting mediation through OGIS does not toll the ninety (90) day limit to file a timely appeal with OIP.

Sincerely,

Record/Information Dissemination Section
Information Management Division

Enclosures

**FBI FOIPA Addendum**

**As referenced in our letter responding to your Freedom of Information/Privacy Acts (FOIPA) request, the FBI FOIPA Addendum provides information applicable to your request. Part 1 of the Addendum includes standard responses that apply to all requests. Part 2 includes standard responses that apply to requests for records about individuals to the extent your request seeks the listed information. Part 3 includes general information about FBI records, searches, and programs.**

**Part 1: The standard responses below apply to all requests:**

(i) **5 U.S.C. § 552(c).** Congress excluded three categories of law enforcement and national security records from the requirements of the FOIPA [5 U.S.C. § 552(c)]. FBI responses are limited to those records subject to the requirements of the FOIPA. Additional information about the FBI and the FOIPA can be found on the www.fbi.gov/foia website.

(ii) **Intelligence Records**. To the extent your request seeks records of intelligence sources, methods, or activities, the FBI can neither confirm nor deny the existence of records pursuant to FOIA exemptions (b)(1), (b)(3), and as applicable to requests for records about individuals, PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(1), (b)(3), and (j)(2)]. The mere acknowledgment of the existence or nonexistence of such records is itself a classified fact protected by FOIA exemption (b)(1) and/or would reveal intelligence sources, methods, or activities protected by exemption (b)(3) [50 USC § 3024(i)(1)]. This is a standard response and should not be read to indicate that any such records do or do not exist.

**Part 2: The standard responses below apply to all requests for records on individuals:**

(i) **Requests for Records about any Individual—Watch Lists.** The FBI can neither confirm nor deny the existence of any individual's name on a watch list pursuant to FOIA exemption (b)(7)(E) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (j)(2)]. This is a standard response and should not be read to indicate that watch list records do or do not exist.

(ii) **Requests for Records about any Individual—Witness Security Program Records.** The FBI can neither confirm nor deny the existence of records which could identify any participant in the Witness Security Program pursuant to FOIA exemption (b)(3) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(3), 18 U.S.C. 3521, and (j)(2)]. This is a standard response and should not be read to indicate that such records do or do not exist.

(iii) **Requests for Confidential Informant Records.** The FBI can neither confirm nor deny the existence of confidential informant records pursuant to FOIA exemptions (b)(7)(D), (b)(7)(E), and (b)(7)(F) [5 U.S.C.§ § 552 (b)(7)(D), (b)(7)(E), and (b)(7)(F)] and Privacy Act exemption (j)(2) [5 U.S.C.§ 552a (j)(2)]. The mere acknowledgment of the existence or nonexistence of such records would reveal confidential informant identities and information, expose law enforcement techniques, and endanger the life or physical safety of individuals. This is a standard response and should not be read to indicate that such records do or do not exist.

**Part 3: General Information:**

(i) **Record Searches and Standard Search Policy.** The Record/Information Dissemination Section (RIDS) searches for reasonably described records by searching systems, such as the Central Records System (CRS), or locations where responsive records would reasonably be found. The CRS is an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled by the FBI per its law enforcement, intelligence, and administrative functions. The CRS spans the entire FBI organization, comprising records of FBI Headquarters, FBI Field Offices, and FBI Legal Attaché Offices (Legats) worldwide; Electronic Surveillance (ELSUR) records are included in the CRS. The standard search policy is a search for main entity records in the CRS. Unless specifically requested, a standard search does not include a search for reference entity records or administrative records of previous FOIPA requests.

a. *Main Entity Records* – created for individuals or non-individuals who are the subjects or the focus of an investigation
b. *Reference Entity Records*- created for individuals or non-individuals who are associated with a case but are not known subjects or the focus of an investigation

(ii) **FBI Records.** Founded in 1908, the FBI carries out a dual law enforcement and national security mission. As part of this dual mission, the FBI creates and maintains records on various subjects; however, the FBI does not maintain records on every person, subject, or entity.

(iii) **Foreseeable Harm Standard.** As amended in 2016, the Freedom of Information Act provides that a federal agency may withhold responsive records only if: (1) the agency reasonably foresees that disclosure would harm an interest protected by one of the nine exemptions that FOIA enumerates, or (2) disclosure is prohibited by law (5 United States Code, Section 552(a)(8)(A)(i)). The FBI considers this foreseeable harm standard in the processing of its requests.

(iv) **Requests for Criminal History Records or Rap Sheets.** The Criminal Justice Information Services (CJIS) Division provides Identity History Summary Checks – often referred to as a criminal history record or rap sheet. These criminal history records are not the same as material in an investigative "FBI file." An Identity History Summary Check is a listing of information taken from fingerprint cards and documents submitted to the FBI in connection with arrests, federal employment, naturalization, or military service. For a fee, individuals can request a copy of their Identity History Summary Check. Forms and directions can be accessed at www.fbi.gov/about-us/cjis/identity-history-summary-checks. Additionally, requests can be submitted electronically at www.edo.cjis.gov. For additional information, please contact CJIS directly at (304) 625-5590.

**EXPLANATION OF EXEMPTIONS**

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552**

(b)(1) (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2) related solely to the internal personnel rules and practices of an agency;

(b)(3) specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4) trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b)(7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8) contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9) geological and geophysical information and data, including maps, concerning wells.

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a**

(d)(5) information compiled in reasonable anticipation of a civil action proceeding;

(j)(2) material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals;

(k)(1) information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2) investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3) material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4) required by statute to be maintained and used solely as statistical records;

(k)(5) investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6) testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k)(7) material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Natalia Mendoza, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Federal Bureau of Investigation,<br><br>Defendant. | Civil Action No. 25-cv-539 (JEM) |

**EXHIBIT E**

**U.S. Department of Justice**
Office of Information Policy
*Sixth Floor*
*441 G Street, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*

July 25, 2025

186861-43559695@requests.muckrock.com

Dear Andrew Free:

This is to advise you that the Office of Information Policy of the U.S. Department of Justice received your administrative appeal from the action of the Federal Bureau of Investigation regarding Request No. 1668952-000 on 07/25/2025.

In an attempt to afford each appellant equal and impartial treatment, OIP has adopted a general practice of assigning appeals in the approximate order of receipt. Your appeal has been assigned number A-2025-02265. Please refer to this number in any future communication with OIP regarding this matter. Please note that if you provided an email address or another electronic means of communication with your request or appeal, this Office may respond to your appeal electronically even if you submitted your appeal to this Office via regular U.S. Mail.

We will notify you of the decision on your appeal as soon as we can. If you have any questions about the status of your appeal, you may contact me at 202-514-3642. If you have submitted your appeal through Freedom of Information Act STAR, you may also check the status of your appeal by logging into your account.

Sincerely,

Priscilla Jones

Priscilla Jones

Supervisory Administrative Specialist

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Natalia Mendoza, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Federal Bureau of Investigation,<br><br>Defendant. | Civil Action No. 25-cv-539 (JEM) |

**EXHIBIT F**

**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

September 15, 2025

ANDREW FREE
DEPT MR 186861
263 HUNTINGTON AVENUE
BOSTON, MA 02115

FOIPA Request No.: 1668952-001
Subject: MILES, GLENN R.

Dear Andrew Free:

This acknowledges receipt of your Freedom of Information/Privacy Acts (FOIPA) request to the FBI regarding the investigation of Glenn Miles. Below you will find check boxes and relevant paragraphs about your request, as well as specific determinations required by these statutes. Please read each one carefully.

- [x] Your request has been received at FBI Headquarters for processing.
- [x] You submitted your request via the FBI's eFOIPA system.
    - [x] Future correspondence about your FOIPA request will be provided in an email link unless the record file type is not supported by the eFOIPA system.
    - [ ] Correspondence for requests containing audio, video, or high-resolution photographs cannot be sent through the eFOIPA system. Future correspondence about your FOIPA request will be delivered through standard mail.
- [ ] The subject of your request is currently being processed and documents subject to the FOIPA will be released to you upon completion.
- [ ] Release of responsive records subject to the FOIPA will be posted to the FBI's electronic FOIA Library (The Vault), http:/vault.fbi.gov, and you will be contacted when the release is posted.
- [ ] Your request for a public interest fee waiver is being considered and you will be advised of the decision if fees are applicable. If your fee waiver is not granted, you will be responsible for applicable fees per your designated fee category below.
- [x] For the purpose of assessing fees, we have determined:
    - [ ] As a commercial use requester, you will be charged applicable search, review, and duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(I).
    - [ ] As an educational institution, noncommercial scientific institution or representative of the news media requester, you will be charged applicable duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(II).
    - [x] As a general (all others) requester, you will be charged applicable search and duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(III).

You also requested information regarding one or more third parties. Please be advised the FBI will neither confirm nor deny the existence of such records pursuant to FOIA exemptions (b)(6) and (b)(7)(C), 5 U.S.C. §§ 552 (b)(6) and (b)(7)(C). The mere acknowledgement of the existence of FBI records on third-party individuals could reasonably be expected to constitute an unwarranted invasion of personal privacy. This is our standard response to such requests and should not be taken to mean that records do, or do not, exist. Please visit www.fbi.gov/foia for more information about making requests for records on third party individuals (living or deceased).

Please check the status of your FOIPA request at www.vault.fbi.gov by clicking on "Check Status of your FOI/PA Request." Status updates are adjusted weekly. The status of newly assigned requests may not be available until the next weekly update. If the FOIPA has been closed, the notice will indicate that appropriate correspondence has been mailed to the address on file.

Additional information about the FOIPA can be found at www.fbi.gov/foia. Should you have questions regarding your request, please feel free to contact foipaquestions@fbi.gov. Please reference the FOIPA Request number listed above in all correspondence concerning your request.

If you are not satisfied with the FBI's determination in response to this request, you may proceed under any or all of the following options:

- You may seek dispute resolution services through the FBI directly by emailing our FOIA Public Liaison at foipaquestions@fbi.gov. The subject heading should clearly state "Dispute Resolution Services." Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

- You may contact the Office of Government Information Services (OGIS), who serves as the federal FOIA Ombudsman. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

- You may file an administrative appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal. **Pursuant to 28 C.F.R. § 16.8(a), your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of this response to your request.** If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." Please reference the FOIPA Request Number listed above in your correspondence so it may be easily identified. If possible, please provide a copy of your original request and this response letter with your appeal.

Note: Utilizing the FBI's dispute resolution services or requesting mediation through OGIS does not toll the ninety (90) day limit to file a timely appeal with OIP.

Sincerely,

Record/Information Dissemination Section
Information Management Division

Enclosures

## EXPLANATION OF EXEMPTIONS

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552**

(b)(1) (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2) related solely to the internal personnel rules and practices of an agency;

(b)(3) specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4) trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b)(7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8) contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9) geological and geophysical information and data, including maps, concerning wells.

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a**

(d)(5) information compiled in reasonable anticipation of a civil action proceeding;

(j)(2) material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals;

(k)(1) information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2) investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3) material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4) required by statute to be maintained and used solely as statistical records;

(k)(5) investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6) testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k)(7) material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

**U.S Department of Justice**

# Certification of Identity

FORM APPROVED OMB NO. 1103-0016
EXPIRES 03/31/17

**Privacy Act Statement.** In accordance with 28 CFR Section 16.41(d) personal data sufficient to identify the individuals submitting requests by mail under the Privacy Act of 1974, 5 U.S.C. Section 552a, is required. The purpose of this solicitation is to ensure that the records of individuals who are the subject of U.S. Department of Justice systems of records are not wrongfully disclosed by the Department. Requests will not be processed if this information is not furnished. False information on this form may subject the requester to criminal penalties under 18 U.S.C. Section 1001 and/or 5 U.S.C. Section 552a(i)(3).

Public reporting burden for this collection of information is estimated to average 0.50 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Suggestions for reducing this burden may be submitted to the Office of Information and Regulatory Affairs, Office of Management and Budget, Public Use Reports Project (1103-0016), Washington, DC 20503.

Full Name of Requester [1] ______________________________

Citizenship Status [2] ______________ Social Security Number [3] ______________

Current Address ______________________________

Date of Birth ______________ Place of Birth ______________

## OPTIONAL: Authorization to Release Information to Another Person

This form is also to be completed by a requester who is authorizing information relating to himself or herself to be released to another person.

Further, pursuant to 5 U.S.C. Section 552a(b), I authorize the U.S. Department of Justice to release any and all information relating to me to:

______________________________

**Print or Type Name**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. 552a(i)(3) by a fine of not more than $5,000.

**Signature [4] ______________________________ Date ______________**

[1] Name of individual who is the subject of the record(s) sought.

[2] Individual submitting a request under the Privacy Act of 1974 must be either "a citizen of the United States or an alien lawfully admitted for permanent residence," pursuant to 5 U.S.C. Section 552a(a)(2). Requests will be processed as Freedom of Information Act requests pursuant to 5 U.S.C. Section 552, rather than Privacy Act requests, for individuals who are not United States citizens or aliens lawfully admitted for permanent residence.

[3] Providing your social security number is voluntary. You are asked to provide your social security number only to facilitate the identification of records relating to you. Without your social security number, the Department may be unable to locate any or all records pertaining to you.

[4] Signature of individual who is the subject of the record sought.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

Natalia Mendoza, *et al.*,

Plaintiffs,

v.

Federal Bureau of Investigation,

Defendant.

Civil Action No. 25-cv-539 (JEM)

**EXHIBIT G**

**U.S. Department of Justice**
Office of Information Policy
*Sixth Floor*
*441 G Street, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*

Andrew Free

Re: Appeal No. A-2025-02265

Request No. 1668952-000

186861-43559695@requests.muckrock.com

**VIA: Online Portal - 09/23/2025**

Dear Andrew Free:

You appealed from the action of the Federal Bureau of Investigation (FBI) on your Freedom of Information Act (FOIA) request for access to records concerning Glenn R. Miles. I have construed your appeal as concerning the withholdings made by the FBI and the adequacy of the FBI's search for responsive records.

After carefully considering your appeal, and as a result of discussions between FBI personnel and this Office, please be advised that the FBI has reopened your request under Request No. 1668952-001 to conduct a search for additional responsive records. You may appeal any future adverse determination made by the FBI. If you would like to inquire about the status of this request or to receive an estimated date of completion, please contact the FBI's FOIA Customer Service Center directly at 540-869-4593. I am otherwise affirming the FBI's action on your request.

The FOIA provides for disclosure of many agency records. At the same time, Congress included in the FOIA nine exemptions from disclosure that provide protection for important interests such as personal privacy, privileged communications, and certain law enforcement activities. The FBI properly withheld certain information because it is protected from disclosure under the FOIA pursuant to:

5 U.S.C. § 552(b)(3), which concerns matters specifically exempted from release by statute (in this instance, Rule 6(e) of the Federal Rules of Criminal Procedure, which pertains to the secrecy of grand jury proceedings);

5 U.S.C. § 552(b)(6), which concerns material the release of which would constitute a

clearly unwarranted invasion of the personal privacy of third parties;

5 U.S.C. § 552(b)(7)(C), which concerns records or information compiled for law enforcement purposes the release of which could reasonably be expected to constitute an unwarranted invasion of the personal privacy of third parties;

5 U.S.C. § 552(b)(7)(D), which concerns records or information compiled for law enforcement purposes the release of which could reasonably be expected to disclose the identities of confidential sources and information furnished by such sources; and

5 U.S.C. § 552(b)(7)(E), which concerns records or information compiled for law enforcement purposes the release of which would disclose techniques and procedures or guidelines for law enforcement investigations or prosecutions.

Please be advised that for each of these exemptions, it is reasonably foreseeable that disclosure of the information withheld would harm the interests protected by these exemptions.

Please be advised that this Office's decision was made only after a full review of this matter. Your appeal was assigned to an attorney with this Office who thoroughly reviewed and analyzed your appeal, your underlying request, and the action of the FBI in response to your request.

If you are dissatisfied with my action on your appeal, the FOIA permits you to file a lawsuit in federal district court in accordance with 5 U.S.C. § 552(a)(4)(B).

For your information, the Office of Government Information Services (OGIS) offers mediation services to resolve disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. Using OGIS services does not affect your right to pursue litigation. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; email at ogis@nara.gov; telephone at 202-741-5770; toll-free at 1-877-684-6448; or facsimile at 202-741-5769. If you have any questions regarding the action this Office has taken on your appeal, you may contact this Office and speak with the undersigned agency official by calling 202-514-3642.

Sincerely,

X____________________________
Christina Troiani
Chief, Administrative Appeals Staff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

Natalia Mendoza, *et al.*,

Plaintiffs,

v.

Federal Bureau of Investigation,

Defendant.

Civil Action No. 25-cv-539 (JEM)

**EXHIBIT H**

# FOIA APPEAL

MUCKROCK NEWS
DEPT MR 186861
263 HUNTINGTON AVE
BOSTON MA 02115

0000136105
P2 T30 R7861

7861 1 MB 0.672
FEDERAL BUREAU OF INVESTIGATION
Attn Initial Processing Ops Unit
200 Constitution Dr Record/Info Dissemination Sect
Winchester, VA 22602-4693

September 26, 2025

This is a follow up to request number 1668952-001:

Good morning,

I appeal the 9/15/2025 communication from FBI regarding the request designated 1668952-001, which categorically denies some categories of unspecified records because they are third-party requests, and suggests that I provide a Certificate of Identity in order to access those records. The subject of the records I sought is a dead person. Hence, I cannot, within the current limits of generally accepted reality, obtain a sworn certification of identity regarding that individual at this time. As to other subjects, whom FBI may contend are "third parties", a balancing test is required to determine whether the exemptions cited even protect those individuals' identities, and no blanket application of Exemptions 6 or 7 is permitted. I therefore appeal the agency's second "determination" in this case, which arrived roughly a week before the resolution and partial remand of my first appeal.

Please remand this portion of the case to FBI FOIA with instructions to process records notwithstanding the presence of "third party" information and the absence of certification of identity forms signed by the Border Patrol Agent killed in 1986.

Many thanks,

Andrew Free

View request history, see one related attachment, upload responsive documents, and report problems here:
https://www.muckrock.com/respond/2093891/

If prompted for a passcode, please enter:
VRFKWMCA

Attachments:
• A-2025-02265_response

Filed via MuckRock.com
E-mail (Preferred): 186861-43559695@requests.muckrock.com

0001361050387601

PLEASE NOTE OUR NEW ADDRESS
For mailed responses, please address (see note):
MuckRock News

MuckRock News
DEPT MR 186861
263 Huntington Ave
Boston, MA 02115
186861-43559695@requests.muckrock.com

---

DEPT MR 186861
263 Huntington Ave
Boston, MA 02115

PLEASE NOTE: This request is not filed by a MuckRock staff member, but is being sent through MuckRock by the above in order to better track, share, and manage public records requests. Also note that improperly addressed (i.e., with the requester's name rather than "MuckRock News" and the department number) requests might be returned as undeliverable.

---

On Sept. 23, 2025:
Subject: Response to FOIA Appeal A-2025-02265
The Office of Information Policy has made its final determination on your FOIA Appeal Number A-2025-02265 . A copy of this determination is enclosed for your review, along with any enclosures, if applicable. Thank you.

---

On Sept. 15, 2025:
Subject: eFOIA files available
There are eFOIA files available for you to download.

---

On July 25, 2025:
Subject: Acknowledgment of FOIA Appeal A-2025-02265
The Office of Information Policy has received your FOIA Appeal. Please see the attached acknowledgment letter.

---

On July 15, 2025:
Subject: RE: Freedom of Information Act Request: Glenn R. Miles FBI Files
We appeal the redactions in this release, and also the determination not to provide us additional records without action from us. If you have closed this request, please reopen it and provide the 1 media file.

Thank you.

---

On May 29, 2025:
Subject: eFOIA files available
There are eFOIA files available for you to download.

---

On May 21, 2025:
Subject: Freedom of Information Act Request: Glenn R. Miles FBI Files
To Whom It May Concern:

MuckRock News
DEPT MR 186861
263 Huntington Ave
Boston, MA 02115
186861-43559695@requests.muckrock.com

---

Pursuant to the Freedom of Information Act, I hereby request the following records:

I request any FBI records pertaining to Glenn R. Miles, who was killed in the line of duty as a Customs Agent for the U.S. Treasury Department in Arizona on February 21, 1986. This request includes, but is not limited to any FBI lab analysis of Agent Miles' handheld audio recorder, or references to its contents, as well as any 302s or field reports regarding Agent Miles' potential interactions with the alleged drug traffickers who were reportedly involved in his murder. Finally, this request includes any records sent or received by FBI to William Laverty, U.S. Customs Attache at the U.S. Embassy in Mexico City regarding the July 1986 arrest of five Mexican nationals in Hermosillo, Sonora, Mexico who were alleged to have been involved with the slaying.

The requested documents will be made available to the general public, and this request is not being made for commercial purposes.

In the event that there are fees, I would be grateful if you would inform me of the total charges in advance of fulfilling my request. I would prefer the request filled electronically, by e-mail attachment if available or CD-ROM if not.

Thank you in advance for your anticipated cooperation in this matter. I look forward to receiving your response to this request within 20 business days, as the statute requires.

Sincerely,

Andrew Free

View request history, see one related attachment, upload responsive documents, and report problems here:
https://www.muckrock.com/respond/2093891/

If prompted for a passcode, please enter:
VRFKWMCA

Attachments:
• A-2025-02265_response

Filed via MuckRock.com
E-mail (Preferred): 186861-43559695@requests.muckrock.com

PLEASE NOTE OUR NEW ADDRESS
For mailed responses, please address (see note):
MuckRock News
DEPT MR 186861
263 Huntington Ave
Boston, MA 02115

00001361050387602

MuckRock News
DEPT MR 186861
263 Huntington Ave
Boston, MA 02115
186861-43559695@requests.muckrock.com

---

PLEASE NOTE: This request is not filed by a MuckRock staff member, but is being sent through MuckRock by the above in order to better track, share, and manage public records requests. Also note that improperly addressed (i.e., with the requester's name rather than "MuckRock News" and the department number) requests might be returned as undeliverable.

**U.S. Department of Justice**
Office of Information Policy
*Sixth Floor*
*441 G Street, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*

Andrew Free

Re: Appeal No. A-2025-02265

Request No. 1668952-000

186861-43559695@requests.muckrock.com

**VIA: Online Portal - 09/23/2025**

Dear Andrew Free:

You appealed from the action of the Federal Bureau of Investigation (FBI) on your Freedom of Information Act (FOIA) request for access to records concerning Glenn R. Miles. I have construed your appeal as concerning the withholdings made by the FBI and the adequacy of the FBI's search for responsive records.

After carefully considering your appeal, and as a result of discussions between FBI personnel and this Office, please be advised that the FBI has reopened your request under Request No. 1668952-001 to conduct a search for additional responsive records. You may appeal any future adverse determination made by the FBI. If you would like to inquire about the status of this request or to receive an estimated date of completion, please contact the FBI's FOIA Customer Service Center directly at 540-869-4593. I am otherwise affirming the FBI's action on your request.

The FOIA provides for disclosure of many agency records. At the same time, Congress included in the FOIA nine exemptions from disclosure that provide protection for important interests such as personal privacy, privileged communications, and certain law enforcement activities. The FBI properly withheld certain information because it is protected from disclosure under the FOIA pursuant to:

5 U.S.C. § 552(b)(3), which concerns matters specifically exempted from release by statute (in this instance, Rule 6(e) of the Federal Rules of Criminal Procedure, which pertains to the secrecy of grand jury proceedings);

5 U.S.C. § 552(b)(6), which concerns material the release of which would constitute a

00001361050387603

clearly unwarranted invasion of the personal privacy of third parties;

5 U.S.C. § 552(b)(7)(C), which concerns records or information compiled for law enforcement purposes the release of which could reasonably be expected to constitute an unwarranted invasion of the personal privacy of third parties;

5 U.S.C. § 552(b)(7)(D), which concerns records or information compiled for law enforcement purposes the release of which could reasonably be expected to disclose the identities of confidential sources and information furnished by such sources; and

5 U.S.C. § 552(b)(7)(E), which concerns records or information compiled for law enforcement purposes the release of which would disclose techniques and procedures or guidelines for law enforcement investigations or prosecutions.

Please be advised that for each of these exemptions, it is reasonably foreseeable that disclosure of the information withheld would harm the interests protected by these exemptions.

Please be advised that this Office's decision was made only after a full review of this matter. Your appeal was assigned to an attorney with this Office who thoroughly reviewed and analyzed your appeal, your underlying request, and the action of the FBI in response to your request.

If you are dissatisfied with my action on your appeal, the FOIA permits you to file a lawsuit in federal district court in accordance with 5 U.S.C. § 552(a)(4)(B).

For your information, the Office of Government Information Services (OGIS) offers mediation services to resolve disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. Using OGIS services does not affect your right to pursue litigation. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; email at ogis@nara.gov; telephone at 202-741-5770; toll-free at 1-877-684-6448; or facsimile at 202-741-5769. If you have any questions regarding the action this Office has taken on your appeal, you may contact this Office and speak with the undersigned agency official by calling 202-514-3642.

Sincerely,

X

Christina Troiani
Chief, Administrative Appeals Staff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Natalia Mendoza, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Federal Bureau of Investigation,<br><br>Defendant. | Civil Action No. 25-cv-539 (JEM) |

**EXHIBIT I**

**U.S. Department of Justice**
Office of Information Policy
*Sixth Floor*
*441 G Street, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*

November 20, 2025

Andrew Free

MuckRock News DEPT MR#186861 263 Huntington
Ave
Boston, MA 02115
186861-43559695@requests.muckrock.com

Dear Andrew Free:

This is to advise you that the Office of Information Policy of the U.S. Department of Justice received your administrative appeal from the action of the Federal Bureau of Investigation regarding Request No. 1668952-001 on 10/08/2025. Please note that this Office was closed due to a lapse in funding appropriations from 10/1/25 through 11/12/25, which will result in a delay in responding to your appeal.

In an attempt to afford each appellant equal and impartial treatment, OIP has adopted a general practice of assigning appeals in the approximate order of receipt. Your appeal has been assigned number A-2026-00101. Please refer to this number in any future communication with OIP regarding this matter. Please note that if you provided an email address or another electronic means of communication with your request or appeal, this Office may respond to your appeal electronically even if you submitted your appeal to this Office via regular U.S. Mail.

We will notify you of the decision on your appeal as soon as we can. If you have any questions about the status of your appeal, you may contact me at 202-514-3642. If you have submitted your appeal through Freedom of Information Act STAR, you may also check the status of your appeal by logging into your account.

Sincerely,
Priscilla Jones

Priscilla Jones

Supervisory Administrative Specialist

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Natalia Mendoza, *et al.*,<br>Plaintiffs,<br>v.<br>Federal Bureau of Investigation,<br>Defendant. | Civil Action No. 25-cv-539 (JEM) |

**EXHIBIT J**

**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

April 30, 2026

Natalia Mendoza, Andrew Free
C/O Daniel Melo
The Melo Law Firm
2920 Forestville Road, Suite 100
Private Mail Box 1192
Raleigh, North Carolina 27616

Natalia Mendoza, et al v, U.S. Federal Bureau of Investigation
Civil Action No.: 25-cv-539
FOIPA Request No.: 1668952-0, 1668952-1
Subject: FBI investigation into Glenn R. Miles killed in line of duty as a Customs Agent for the U.S. Treasury Department of Arizona

Dear Ms. Mendoza, Mr. Free:

The purpose of this letter is to advise you of the status of your pending Freedom of Information/Privacy Acts (FOIPA) request. The material you requested is located in an investigative file which is exempt from disclosure pursuant to Title 5 United States Code section 552(b)(7)(A). 5 U.S.C. § 552(b)(7)(A) exempts from disclosure:

> "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information could reasonably be expected to interfere with enforcement proceedings."

Currently, the FBI is reviewing this material on an interim basis for segregability. The FBI identified 28 pages of segregable, non-exempt information for this interim release. All other material is categorically exempt from disclosure pursuant to FOIA Exemption 7(A), and underlying FOIA Exemptions b3, b6, b7C, b7D. *See Maydak v. U.S. Department of Justice*, 218 F.3d 760 (D.C. Cir. 2000).

Please refer to the enclosed FBI FOIPA Addendum for additional information applicable to your request. **"Part 1"** of the Addendum includes standard responses that apply to all requests. **"Part 2"** includes additional standard responses that apply to all requests for records about yourself or any third-party individuals. **"Part 3"** includes general information about FBI records that you may find useful. Also enclosed is our Explanation of Exemptions.

Although your request is in litigation, we are required by law to provide you the following information:

If you are not satisfied with the FBI's determination in response to this request, you may proceed under any or all of the following options:

- You may seek dispute resolution services through the FBI directly by emailing our FOIA Public Liaison at foipaquestions@fbi.gov. The subject heading should clearly state "Dispute Resolution Services." Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

- You may contact the Office of Government Information Services (OGIS), who serves as the federal FOIA Ombudsman. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

- You may file an administrative appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal. **Pursuant to 28 C.F.R. § 16.8(a), your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of this response to your request.** If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." Please reference the FOIPA Request Number listed above in your correspondence so it may be easily identified. If possible, please provide a copy of your original request and this response letter with your appeal.

Note: Utilizing the FBI's dispute resolution services or requesting mediation through OGIS does not toll the ninety (90) day limit to file a timely appeal with OIP.

Please direct any further inquiries about this case to the attorney representing the Government in this matter. Please use the FOIPA Request Number and/or Civil Action Number in all correspondence or inquiries concerning your request.

Sincerely,

Amie M. Napier

Amie M. Napier
Section Chief
Record/Information Dissemination Section
Information Management Division

Enclosures

**FBI FOIPA Addendum**

**As referenced in our letter responding to your Freedom of Information/Privacy Acts (FOIPA) request, the FBI FOIPA Addendum provides information applicable to your request. Part 1 of the Addendum includes standard responses that apply to all requests. Part 2 includes standard responses that apply to requests for records about individuals to the extent your request seeks the listed information. Part 3 includes general information about FBI records, searches, and programs.**

**Part 1: The standard responses below apply to all requests:**

(i) **5 U.S.C. § 552(c).** Congress excluded three categories of law enforcement and national security records from the requirements of the FOIPA [5 U.S.C. § 552(c)]. FBI responses are limited to those records subject to the requirements of the FOIPA. Additional information about the FBI and the FOIPA can be found on the www.fbi.gov/foia website.

(ii) **Intelligence Records**. To the extent your request seeks records of intelligence sources, methods, or activities, the FBI can neither confirm nor deny the existence of records pursuant to FOIA exemptions (b)(1), (b)(3), and as applicable to requests for records about individuals, PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(1), (b)(3), and (j)(2)]. The mere acknowledgment of the existence or nonexistence of such records is itself a classified fact protected by FOIA exemption (b)(1) and/or would reveal intelligence sources, methods, or activities protected by exemption (b)(3) [50 USC § 3024(i)(1)]. This is a standard response and should not be read to indicate that any such records do or do not exist.

**Part 2: The standard responses below apply to all requests for records on individuals:**

(i) **Requests for Records about any Individual—Watch Lists.** The FBI can neither confirm nor deny the existence of any individual's name on a watch list pursuant to FOIA exemption (b)(7)(E) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (j)(2)]. This is a standard response and should not be read to indicate that watch list records do or do not exist.

(ii) **Requests for Records about any Individual—Witness Security Program Records.** The FBI can neither confirm nor deny the existence of records which could identify any participant in the Witness Security Program pursuant to FOIA exemption (b)(3) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(3), 18 U.S.C. 3521, and (j)(2)]. This is a standard response and should not be read to indicate that such records do or do not exist.

(iii) **Requests for Confidential Informant Records.** The FBI can neither confirm nor deny the existence of confidential informant records pursuant to FOIA exemptions (b)(7)(D), (b)(7)(E), and (b)(7)(F) [5 U.S.C.§ § 552 (b)(7)(D), (b)(7)(E), and (b)(7)(F)] and Privacy Act exemption (j)(2) [5 U.S.C.§ 552a (j)(2)]. The mere acknowledgment of the existence or nonexistence of such records would reveal confidential informant identities and information, expose law enforcement techniques, and endanger the life or physical safety of individuals. This is a standard response and should not be read to indicate that such records do or do not exist.

**Part 3: General Information:**

(i) **Record Searches and Standard Search Policy.** The Record/Information Dissemination Section (RIDS) searches for reasonably described records by searching systems, such as the Central Records System (CRS), or locations where responsive records would reasonably be found. The CRS is an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled by the FBI per its law enforcement, intelligence, and administrative functions. The CRS spans the entire FBI organization, comprising records of FBI Headquarters, FBI Field Offices, and FBI Legal Attaché Offices (Legats) worldwide; Electronic Surveillance (ELSUR) records are included in the CRS. The standard search policy is a search for main entity records in the CRS. Unless specifically requested, a standard search does not include a search for reference entity records or administrative records of previous FOIPA requests.

a. *Main Entity Records* – created for individuals or non-individuals who are the subjects or the focus of an investigation
b. *Reference Entity Records*- created for individuals or non-individuals who are associated with a case but are not known subjects or the focus of an investigation

(ii) **FBI Records.** Founded in 1908, the FBI carries out a dual law enforcement and national security mission. As part of this dual mission, the FBI creates and maintains records on various subjects; however, the FBI does not maintain records on every person, subject, or entity.

(iii) **Foreseeable Harm Standard.** As amended in 2016, the Freedom of Information Act provides that a federal agency may withhold responsive records only if: (1) the agency reasonably foresees that disclosure would harm an interest protected by one of the nine exemptions that FOIA enumerates, or (2) disclosure is prohibited by law (5 United States Code, Section 552(a)(8)(A)(i)). The FBI considers this foreseeable harm standard in the processing of its requests.

(iv) **Requests for Criminal History Records or Rap Sheets.** The Criminal Justice Information Services (CJIS) Division provides Identity History Summary Checks – often referred to as a criminal history record or rap sheet. These criminal history records are not the same as material in an investigative "FBI file." An Identity History Summary Check is a listing of information taken from fingerprint cards and documents submitted to the FBI in connection with arrests, federal employment, naturalization, or military service. For a fee, individuals can request a copy of their Identity History Summary Check. Forms and directions can be accessed at www.fbi.gov/about-us/cjis/identity-history-summary-checks. Additionally, requests can be submitted electronically at www.edo.cjis.gov. For additional information, please contact CJIS directly at (304) 625-5590.

## EXPLANATION OF EXEMPTIONS

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552**

(b)(1) (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2) related solely to the internal personnel rules and practices of an agency;

(b)(3) specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4) trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b)(7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8) contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9) geological and geophysical information and data, including maps, concerning wells.

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a**

(d)(5) information compiled in reasonable anticipation of a civil action proceeding;

(j)(2) material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals;

(k)(1) information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2) investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3) material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4) required by statute to be maintained and used solely as statistical records;

(k)(5) investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6) testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k)(7) material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Natalia Mendoza, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Federal Bureau of Investigation,<br><br>Defendant. | Civil Action No. 25-cv-539 (JEM) |

**EXHIBIT K**

**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

May 29, 2026

Natalia Mendoza, Andrew Free
C/O Daniel Melo
The Melo Law Firm
2920 Forestville Road, Suite 100
Private Mail Box 1192
Raleigh, North Carolina 27616

Natalia Mendoza, et al v, U.S. Federal Bureau of Investigation
Civil Action No.: 25-cv-539
FOIPA Request No.: 1668952-0, 1668952-1
Subject: FBI investigation into Glenn R. Miles killed in line of duty as a Customs Agent for the U.S. Treasury Department of Arizona

Dear Ms. Mendoza, Mr. Free:

The purpose of this letter is to advise you of the status of your pending Freedom of Information/Privacy Acts (FOIPA) request. The material you requested is located in an investigative file which is exempt from disclosure pursuant to Title 5 United States Code section 552(b)(7)(A). 5 U.S.C. § 552(b)(7)(A) exempts from disclosure:

> "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information could reasonably be expected to interfere with enforcement proceedings."

Currently, the FBI is reviewing this material on an interim basis for segregability. The FBI identified 0 pages of segregable, non-exempt information for this interim release. All other material is categorically exempt from disclosure pursuant to FOIA Exemption 7(A), and underlying FOIA Exemptions b6, b7C *See Maydak v. U.S. Department of Justice*, 218 F.3d 760 (D.C. Cir. 2000).

Media consisting of 3 minutes, 16 seconds of audio has been reviewed under the FOIPA, Title 5, United States Code, Sections 552/552a, and this material is being withheld in its entirety by the FBI pursuant to exemption (b)(7)(E). The exemption used is explained on the enclosed Explanation of Exemptions.

Please refer to the enclosed FBI FOIPA Addendum for additional information applicable to your request. **"Part 1"** of the Addendum includes standard responses that apply to all requests. **"Part 2"** includes additional standard responses that apply to all requests for records about yourself or any third-party individuals. **"Part 3"** includes general information about FBI records that you may find useful. Also enclosed is our Explanation of Exemptions.

Although your request is in litigation, we are required by law to provide you the following information:

If you are not satisfied with the FBI's determination in response to this request, you may proceed under any or all of the following options:

- You may seek dispute resolution services through the FBI directly by emailing our FOIA Public Liaison at fbi.foia@fbi.gov. The subject heading should clearly state "Dispute Resolution Services." Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

- You may contact the Office of Government Information Services (OGIS), who serves as the federal FOIA Ombudsman. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park,

Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

- You may file an administrative appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal. **Pursuant to 28 C.F.R. § 16.8(a), your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of this response to your request.** If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." Please reference the FOIPA Request Number listed above in your correspondence so it may be easily identified. If possible, please provide a copy of your original request and this response letter with your appeal.

Note: Utilizing the FBI's dispute resolution services or requesting mediation through OGIS does not toll the ninety (90) day limit to file a timely appeal with OIP.

Please direct any further inquiries about this case to the attorney representing the Government in this matter. Please use the FOIPA Request Number and/or Civil Action Number in all correspondence or inquiries concerning your request.

Sincerely,

Isabel Lara

Isabel Lara
Acting Section Chief
Record/Information Dissemination Section
Information Management Division

Enclosures

**FBI FOIPA Addendum**

**As referenced in our letter responding to your Freedom of Information/Privacy Acts (FOIPA) request, the FBI FOIPA Addendum provides information applicable to your request. Part 1 of the Addendum includes standard responses that apply to all requests. Part 2 includes standard responses that apply to requests for records about individuals to the extent your request seeks the listed information. Part 3 includes general information about FBI records, searches, and programs.**

**Part 1: The standard responses below apply to all requests:**

(i) **5 U.S.C. § 552(c).** Congress excluded three categories of law enforcement and national security records from the requirements of the FOIPA [5 U.S.C. § 552(c)]. FBI responses are limited to those records subject to the requirements of the FOIPA. Additional information about the FBI and the FOIPA can be found on the www.fbi.gov/foia website.

(ii) **Intelligence Records**. To the extent your request seeks records of intelligence sources, methods, or activities, the FBI can neither confirm nor deny the existence of records pursuant to FOIA exemptions (b)(1), (b)(3), and as applicable to requests for records about individuals, PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(1), (b)(3), and (j)(2)]. The mere acknowledgment of the existence or nonexistence of such records is itself a classified fact protected by FOIA exemption (b)(1) and/or would reveal intelligence sources, methods, or activities protected by exemption (b)(3) [50 USC § 3024(h)(1)]. This is a standard response and should not be read to indicate that any such records do or do not exist.

**Part 2: The standard responses below apply to all requests for records on individuals:**

(i) **Requests for Records about any Individual—Watch Lists.** The FBI can neither confirm nor deny the existence of any individual's name on a watch list pursuant to FOIA exemption (b)(7)(E) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (j)(2)]. This is a standard response and should not be read to indicate that watch list records do or do not exist.

(ii) **Requests for Records about any Individual—Witness Security Program Records.** The FBI can neither confirm nor deny the existence of records which could identify any participant in the Witness Security Program pursuant to FOIA exemption (b)(3) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(3), 18 U.S.C. 3521, and (j)(2)]. This is a standard response and should not be read to indicate that such records do or do not exist.

(iii) **Requests for Confidential Informant Records.** The FBI can neither confirm nor deny the existence of confidential informant records pursuant to FOIA exemptions (b)(7)(D), (b)(7)(E), and (b)(7)(F) [5 U.S.C.§ § 552 (b)(7)(D), (b)(7)(E), and (b)(7)(F)] and Privacy Act exemption (j)(2) [5 U.S.C.§ 552a (j)(2)]. The mere acknowledgment of the existence or nonexistence of such records would reveal confidential informant identities and information, expose law enforcement techniques, and endanger the life or physical safety of individuals. This is a standard response and should not be read to indicate that such records do or do not exist.

**Part 3: General Information:**

(i) **Record Searches and Standard Search Policy.** The Record/Information Dissemination Section (RIDS) searches for reasonably described records by searching systems, such as the Central Records System (CRS), or locations where responsive records would reasonably be found. The CRS is an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled by the FBI per its law enforcement, intelligence, and administrative functions. The CRS spans the entire FBI organization, comprising records of FBI Headquarters, FBI Field Offices, and FBI Legal Attaché Offices (Legats) worldwide; Electronic Surveillance (ELSUR) records are included in the CRS. The standard search policy is a search for main entity records in the CRS. Unless specifically requested, a standard search does not include a search for reference entity records or administrative records of previous FOIPA requests.

a. *Main Entity Records* – created for individuals or non-individuals who are the subjects or the focus of an investigation
b. *Reference Entity Records*- created for individuals or non-individuals who are associated with a case but are not known subjects or the focus of an investigation

(ii) **FBI Records.** Founded in 1908, the FBI carries out a dual law enforcement and national security mission. As part of this dual mission, the FBI creates and maintains records on various subjects; however, the FBI does not maintain records on every person, subject, or entity.

(iii) **Foreseeable Harm Standard.** As amended in 2016, the Freedom of Information Act provides that a federal agency may withhold responsive records only if: (1) the agency reasonably foresees that disclosure would harm an interest protected by one of the nine exemptions that FOIA enumerates, or (2) disclosure is prohibited by law (5 United States Code, Section 552(a)(8)(A)(i)). The FBI considers this foreseeable harm standard in the processing of its requests.

(iv) **Requests for Criminal History Records or Rap Sheets.** The Criminal Justice Information Services (CJIS) Division provides Identity History Summary Checks – often referred to as a criminal history record or rap sheet. These criminal history records are not the same as material in an investigative "FBI file." An Identity History Summary Check is a listing of information taken from fingerprint cards and documents submitted to the FBI in connection with arrests, federal employment, naturalization, or military service. For a fee, individuals can request a copy of their Identity History Summary Check. Forms and directions can be accessed at www.fbi.gov/services/cjis. Additionally, requests can be submitted electronically at www.edo.cjis.gov. For additional information, please contact CJIS directly at (304) 625-5590.

**EXPLANATION OF EXEMPTIONS**

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552**

(b)(1) (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2) related solely to the internal personnel rules and practices of an agency;

(b)(3) specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4) trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b)(7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8) contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9) geological and geophysical information and data, including maps, concerning wells.

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a**

(d)(5) information compiled in reasonable anticipation of a civil action proceeding;

(j)(2) material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals;

(k)(1) information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2) investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3) material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4) required by statute to be maintained and used solely as statistical records;

(k)(5) investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6) testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k)(7) material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Natalia Mendoza, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Federal Bureau of Investigation,<br><br>Defendant. | Civil Action No. 25-cv-539 (JEM) |

**EXHIBIT L**

**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

June 18, 2026

Natalia Mendoza, Andrew Free
C/O Daniel Melo
The Melo Law Firm
2920 Forestville Road, Suite 100
Private Mail Box 1192
Raleigh, North Carolina 27616

*Natalia Mendoza, et al v. U.S. Federal Bureau of Investigation*
Civil Action No.: 25-cv-539
FOIPA Request No.: 1668952-0, 1668952-1
Subject: FBI investigation into Glenn R. Miles killed in line of duty as a Customs Agent for the U.S. Treasury Department of Arizona

Dear Ms. Mendoza, Mr. Free:

The purpose of this letter is to advise you of the status of your pending Freedom of Information/Privacy Acts (FOIPA) request. The material you requested is located in an investigative file which is exempt from disclosure pursuant to Title 5 United States Code section 552(b)(7)(A). 5 U.S.C. § 552(b)(7)(A) exempts from disclosure:

> "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information [ ] could reasonably be expected to interfere with enforcement proceedings."

Currently, the FBI is reviewing this material on an interim basis for segregability. The FBI identified 0 pages of segregable, non-exempt information for this final release. All other material is categorically exempt from disclosure pursuant to FOIA Exemption 7(A), and underlying FOIA Exemptions b3 Fed. R. Crim. P. 6(e), b6, b7C, b7D, b7E *See Maydak v. U.S. Department of Justice*, 218 F.3d 760 (D.C. Cir. 2000).

Please refer to the enclosed FBI FOIPA Addendum for additional information applicable to your request. **"Part 1"** of the Addendum includes standard responses that apply to all requests. **"Part 2"** includes additional standard responses that apply to all requests for records about yourself or any third-party individuals. **"Part 3"** includes general information about FBI records that you may find useful. Also enclosed is our Explanation of Exemptions.

Although your request is in litigation, we are required by law to provide you the following information:

If you are not satisfied with the FBI's determination in response to this request, you may proceed under any or all of the following options:

- You may seek dispute resolution services through the FBI directly by emailing our FOIA Public Liaison at fbi.foia@fbi.gov. The subject heading should clearly state "Dispute Resolution Services." Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

- You may contact the Office of Government Information Services (OGIS), who serves as the federal FOIA Ombudsman. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

- You may file an administrative appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal. **Pursuant to 28 C.F.R. § 16.8(a), your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of this response to your request.** If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." Please reference the FOIPA Request Number listed above in your correspondence so it may be easily identified. If possible, please provide a copy of your original request and this response letter with your appeal.

Note: Utilizing the FBI's dispute resolution services or requesting mediation through OGIS does not toll the ninety (90) day limit to file a timely appeal with OIP.

Please direct any further inquiries about this case to the attorney representing the Government in this matter. Please use the FOIPA Request Number and/or Civil Action Number in all correspondence or inquiries concerning your request.

Sincerely,

Isabel Lara

Isabel Lara
Acting Section Chief
Record/Information Dissemination Section
Information Management Division

Enclosures

**FBI FOIPA Addendum**

**As referenced in our letter responding to your Freedom of Information/Privacy Acts (FOIPA) request, the FBI FOIPA Addendum provides information applicable to your request. Part 1 of the Addendum includes standard responses that apply to all requests. Part 2 includes standard responses that apply to requests for records about individuals to the extent your request seeks the listed information. Part 3 includes general information about FBI records, searches, and programs.**

**Part 1: The standard responses below apply to all requests:**

(i) **5 U.S.C. § 552(c).** Congress excluded three categories of law enforcement and national security records from the requirements of the FOIPA [5 U.S.C. § 552(c)]. FBI responses are limited to those records subject to the requirements of the FOIPA. Additional information about the FBI and the FOIPA can be found on the www.fbi.gov/foia website.

(ii) **Intelligence Records**. To the extent your request seeks records of intelligence sources, methods, or activities, the FBI can neither confirm nor deny the existence of records pursuant to FOIA exemptions (b)(1), (b)(3), and as applicable to requests for records about individuals, PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(1), (b)(3), and (j)(2)]. The mere acknowledgment of the existence or nonexistence of such records is itself a classified fact protected by FOIA exemption (b)(1) and/or would reveal intelligence sources, methods, or activities protected by exemption (b)(3) [50 USC § 3024(h)(1)]. This is a standard response and should not be read to indicate that any such records do or do not exist.

**Part 2: The standard responses below apply to all requests for records on individuals:**

(i) **Requests for Records about any Individual—Watch Lists.** The FBI can neither confirm nor deny the existence of any individual's name on a watch list pursuant to FOIA exemption (b)(7)(E) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (j)(2)]. This is a standard response and should not be read to indicate that watch list records do or do not exist.

(ii) **Requests for Records about any Individual—Witness Security Program Records.** The FBI can neither confirm nor deny the existence of records which could identify any participant in the Witness Security Program pursuant to FOIA exemption (b)(3) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(3), 18 U.S.C. 3521, and (j)(2)]. This is a standard response and should not be read to indicate that such records do or do not exist.

(iii) **Requests for Confidential Informant Records.** The FBI can neither confirm nor deny the existence of confidential informant records pursuant to FOIA exemptions (b)(7)(D), (b)(7)(E), and (b)(7)(F) [5 U.S.C.§ § 552 (b)(7)(D), (b)(7)(E), and (b)(7)(F)] and Privacy Act exemption (j)(2) [5 U.S.C.§ 552a (j)(2)]. The mere acknowledgment of the existence or nonexistence of such records would reveal confidential informant identities and information, expose law enforcement techniques, and endanger the life or physical safety of individuals. This is a standard response and should not be read to indicate that such records do or do not exist.

**Part 3: General Information:**

(i) **Record Searches and Standard Search Policy.** The Record/Information Dissemination Section (RIDS) searches for reasonably described records by searching systems, such as the Central Records System (CRS), or locations where responsive records would reasonably be found. The CRS is an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled by the FBI per its law enforcement, intelligence, and administrative functions. The CRS spans the entire FBI organization, comprising records of FBI Headquarters, FBI Field Offices, and FBI Legal Attaché Offices (Legats) worldwide; Electronic Surveillance (ELSUR) records are included in the CRS. The standard search policy is a search for main entity records in the CRS. Unless specifically requested, a standard search does not include a search for reference entity records or administrative records of previous FOIPA requests.

a. *Main Entity Records* – created for individuals or non-individuals who are the subjects or the focus of an investigation
b. *Reference Entity Records*- created for individuals or non-individuals who are associated with a case but are not known subjects or the focus of an investigation

(ii) **FBI Records.** Founded in 1908, the FBI carries out a dual law enforcement and national security mission. As part of this dual mission, the FBI creates and maintains records on various subjects; however, the FBI does not maintain records on every person, subject, or entity.

(iii) **Foreseeable Harm Standard.** As amended in 2016, the Freedom of Information Act provides that a federal agency may withhold responsive records only if: (1) the agency reasonably foresees that disclosure would harm an interest protected by one of the nine exemptions that FOIA enumerates, or (2) disclosure is prohibited by law (5 United States Code, Section 552(a)(8)(A)(i)). The FBI considers this foreseeable harm standard in the processing of its requests.

(iv) **Requests for Criminal History Records or Rap Sheets.** The Criminal Justice Information Services (CJIS) Division provides Identity History Summary Checks – often referred to as a criminal history record or rap sheet. These criminal history records are not the same as material in an investigative "FBI file." An Identity History Summary Check is a listing of information taken from fingerprint cards and documents submitted to the FBI in connection with arrests, federal employment, naturalization, or military service. For a fee, individuals can request a copy of their Identity History Summary Check. Forms and directions can be accessed at www.fbi.gov/services/cjis. Additionally, requests can be submitted electronically at www.edo.cjis.gov. For additional information, please contact CJIS directly at (304) 625-5590.

## EXPLANATION OF EXEMPTIONS

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552**

(b)(1) (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2) related solely to the internal personnel rules and practices of an agency;

(b)(3) specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4) trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b)(7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8) contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9) geological and geophysical information and data, including maps, concerning wells.

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a**

(d)(5) information compiled in reasonable anticipation of a civil action proceeding;

(j)(2) material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals;

(k)(1) information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2) investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3) material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4) required by statute to be maintained and used solely as statistical records;

(k)(5) investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6) testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k)(7) material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.